FRANK CATTANO, as Administrator of the Estate of PAUL CATTANO, Deceased, Respondent, *v.* METROPOLITAN STREET RAILWAY COMPANY, Appellant.

1. NEGLIGENCE — INJURY RESULTING FROM OVERCROWDED PLATFORM OF HORSE CAR — WHEN NEGLIGENCE OF RAILROAD COMPANY A QUESTION OF FACT. When a carrier of passengers fails to provide either seats or standing room inside its cars so that a passenger must stand on the platform in order to ride at all and the company permits him to ride there, it cannot allow the platform to become so crowded that he is liable to be pushed off by an employee in operating the car without presenting a question of fact for the jury as to its negligence in the premises.

2. SAME. Where it appears in an action of negligence that the plaintiff's intestate was a passenger on one of defendant's horse cars, the seats of which were occupied, and in the aisles of which there was no standing room; that he, with seven others, was riding on the front platform, which "apparently had no room for anybody else;" that the car was going very fast on a down grade, and the driver, in his efforts to apply the brakes, "made room for himself" by backing and pushing and thus jostled the crowd and shoved the people around so that the decedent was thrown off and instantly killed, the questions of negligence on the part of the defendant and freedom from contributory negligence on the part of the decedent are properly submitted to the jury.

3. CONTRIBUTORY NEGLIGENCE. The decedent is not, as matter of law, chargeable with contributory negligence, because with knowledge of its overcrowding he stood upon the platform, in the absence of evidence that he was ever on a street car before or that he was acquainted with the grade, the method of operating the brakes or with any fact aside from the crowded condition of the platform which might expose him to danger, since the defendant is presumed to have known the situation as it actually existed and the decedent had the right to rely upon defendant to exercise a high degree of care to make the platform safe and secure for his occupation.

4. TRIAL — IMPROPER STATEMENT OF COUNSEL IN SUMMING UP — NOT THE SUBJECT OF REVIEW UNLESS PROPER EXCEPTION IS TAKEN. An improper statement of counsel in summing up should be promptly called to the attention of the court, its objectionable features pointed out, a request made for a direction to counsel to desist and to the jury to disregard, and, in case of refusal, an exception noted in order that the alleged error may be raised and reviewed upon appeal: calling attention to the subject for the first time after the charge and then taking an exception to the language used by counsel in summing up, presents no question reviewable by the Court of Appeals.

5. MOTION TO WITHDRAW A JUROR. A motion to withdraw a juror on account of the improper summing up of counsel rests in the discretion of the trial court, and an exception to its denial presents no error reviewable by the Court of Appeals.

Cattano v. Met. St. Ry. Co., 67 App. Div. 615, affirmed.

(Submitted January 9, 1903; decided February 24, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 18, 1901, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown, Addison C. Ormsbee* and *Henry A. Robinson* for appellant. The complaint should have been dismissed on the ground that no negligence was shown on the part of the defendant. (*Lehr* v. *S. & H. P. R. R. Co.*, 118 N. Y. 556; *Graham* v. *M. Ry. Co.*, 149 N. Y. 336; *Ginna* v. *S. A. R. R. Co.*, 67 N. Y. 596; *Hayes* v. *F. S. S., etc., R.*

*R. Co.*, 97 N. Y. 259.) The summing up of the plaintiff's counsel presents legal error requiring the reversal of this judgment. (*Williams* v. *B. E. R. R. Co.*, 126 N. Y. 96; *People* v. *Baldwin*, 158 N. Y. 542; *People* v. *Mull*, 167 N. Y. 247; *Koelges* v. *G. T. & L. Ins. Co.*, 57 N. Y. 638; *Halpern* v. *N. El. Co.*, 16 App. Div. 90; *Bagelly* v. *M. J. Assn.*, 38 App. Div. 522; *Stewart* v. *M. S. Ry. Co.*, 72 App. Div. 459.)

*Roger Foster*, *Thomas Gilleran* and *Moses Jaffe* for respondent. The motion to dismiss was properly denied. (*Lehr* v. *S. & H. P. R. R. Co.*, 118 N. Y. 556; *Graham* v. *M. Ry. Co.*, 149 N. Y. 336; *Willis* v. *L. I. R. R. Co.*, 34 N. Y. 670; *Dawson* v. *Trustees of N. Y. & B. Bridge*, 31 App. Div. 537; *Ginna* v. *S. A. R. R. Co.*, 67 N. Y. 596; *Murray* v. *B. C. R. R. Co.*, 27 N. Y. S. R. 280; *McGrath* v. *B., etc., R. R. Co.*, 87 Hun, 310; *Schaefer* v. *U. Ry. Co.*, 29 App. Div. 261; *Nolan* v. *B., etc., R. R. Co.*, 87 N. Y. 63; *Henderson* v. *N. El. R. R. Co.*, 46 App. Div. 280.) The exceptions to the closing address of plaintiff's counsel were all taken too late to be available. (*Sweet* v. *M. O. R. R. Co.*, 87 Mich. 559; *A. G. S. R. Co.* v. *Hill*, 93 Ala. 514; *Mainz* v. *Lederer*, 21 R. I. 370; *State* v. *McCool*, 34 Kan. 613; *Rea* v. *Harrington*, 58 Vt. 181; *Ferguson* v. *Moore*, 98 Tenn. 342; *Crumpton* v. *U. S.* 138 U. S. 361; *Morrison* v. *State*, 76 Ind. 335; *W. U. T. Co.* v. *Apple*, 28 S. W. Rep. 1022.)

VANN, J. This action was brought by the plaintiff as the administrator of his deceased son, to recover damages on account of his death caused, as alleged, by the negligence of the defendant. The answer raised the usual issues in such cases.

On July 3d, 1899, the decedent, a young man about twenty years of age, was a passenger on one of the cross-town horse cars of the defendant running on 34th street in the city of New York. The car was crowded inside and out. All the seats were occupied; there was no standing room in the aisle,

and on the front platform where the decedent was riding as many as eight persons were standing. As one witness put it, "The front platform apparently had no room for anybody else." The decedent had been riding on that platform for five or six blocks, and just before the accident he stood next to the step and near the driver. As the car was going very fast on a down grade the driver, in his efforts to apply the brake, "made room for himself" by backing and pushing and thus jostled the crowd and shoved the people around so that the decedent was thrown off and instantly killed. The jury could have found these facts, although they could have found, as certain witnesses for the defendant testified, that the decedent met his death by stepping off backward and falling under the wheels. The defendant's case might have been stronger if the driver or the conductor had been called to corroborate its theory of the accident, but neither was put upon the stand.

Were these facts, which the jury is presumed to have found, sufficient to warrant the inference of actionable negligence on the part of the defendant and freedom from contributory negligence on the part of the plaintiff's intestate?

Assuming that no unnecessary force was used in operating the brake, the primary question is whether the defendant was negligent in allowing the platform to become so crowded that the driver could not use the brake without pushing away those standing near him and thus crowding off some one on the outside. It was the duty of the defendant when it allowed passengers to ride on the platform to use a high degree of care to protect them from injury. As it did not provide railings to keep them from being crowded off in case of a sudden movement in the crowd, it was bound, as the jury at least might have found, to see that the crowd did not become so dense that the driver could not put on the brake without pushing some passenger off. If there had been vacant seats or even standing room inside the case would be different, for then the passenger voluntarily standing on the platform might be held to run his own risk. When a carrier of passengers fails to provide either seats or standing room inside its cars so

that a passenger must stand on the platform in order to ride at all, and the company permits him to ride there, it cannot allow the platform to become so crowded that he is liable to be pushed off by an employee in operating the car without presenting a question of fact for the jury as to its negligence in the premises.

As was said ·by FOLLETT, Ch. J., in *Lehr* v. *Steinway & Hunters Point R. R. Co.* (118 N. Y. 556, 561): " The exposure of a passenger to a danger which the exercise of reasonable foresight would have anticipated and due care avoided is negligence on the part of a carrier. It clearly appears that the defendant undertook to carry more passengers than could sit and stand inside the car, and that both platforms and their steps were filled to their utmost capacity. The actions of persons so crowded together, and the great force which they exercise, sometimes almost unconsciously on. each other, is understood by carriers of ˙passengers and their employees, and the court would not have been justified in nonsuiting the plaintiff and holding, as a matter of law, that the exercise of reasonable foresight would not have led the˙ defendant to anticipate that overcrowding this car and its . platforms might render accidents like the one which befell the plaintiff probable.   *   *   *   Whether the defendant negligently caused the injury to the plaintiff, and whether he negligently contributed to his own injury were, under the evidence, questions of fact for the jury."

In *Willis* v. *Long Island R. R. Co.* (34 N. Y. 670, 683) the court said: " As the defendant in the present case neglected that duty (to furnish seats inside its cars), and the plaintiff rode on the platform because the company did not provide him with suitable and reasonable accommodations within the cars, the circumstance of his being in that position when he was injured. does not relieve the defendant from liability."

In *Merwin* v. *Manhattan Ry. Co.* (48 Hun, 608 ; 113 N. Y. 659) both cars and platforms were so crowded that it was almost impossible for the decedent to get on. As the train

approached a station where he intended to alight, the passengers began to come out on the platform in order to get off, and owing to the pressure he stepped back, fell between the platforms and was fatally injured. It was held that the defendant ought to have foreseen that such an accident might happen and that the omission to provide suitable safeguards against its occurrence was actionable negligence. It was further held that even if it was obvious to the decedent that he would not be able at once to find a seat inside the car, yet the defendant, by taking him upon the train for the purpose of transporting him as a passenger upon the platform, was bound to exercise a high degree of care to make the platform safe and secure for his occupation and that he was entitled to assume that it would do so.

All the cases thus far alluded to were cited with approval in the recent case of *Graham* v. *Manhattan Ry. Co.* (149 N. Y. 336), in which it was held that where a passenger boarded an elevated railroad train and was compelled to ride upon the platform because the crowded condition of the car prevented him from occupying any other position, and he was injured while trying to save himself from being pushed from the platform by a movement of the crowd caused by acts of an employee of the company, it was a question of fact for the jury whether either party was guilty of negligence.

Even when there were vacant seats inside, and a passenger was smoking upon the front platform as permitted by the company, and was injured by the negligence of the defendant, it was held that the question of contributory negligence was one of fact for the jury. (*Nolan* v. *Brooklyn City & N. R. R. Co.*, 87 N. Y. 63. See, also, *Ginna* v. *Second Ave. R. R. Co.*, 67 N. Y. 596 ; *Spooner* v. *Brooklyn City R. R. Co.*, 54 N. Y. 230 ; *Edgerton* v. *N. Y. & Harlem R. R. Co.*, 39 N. Y. 227 ; *Clark* v. *Eighth Ave. R. R. Co.*, 36 N. Y. 135.)

We think that these cases, and others which might be added, demonstrate that the trial judge properly submitted to the jury the usual questions relating to the negligence of the

defendant and the contributory negligence of the plaintiff's intestate.

The argument is made that if it was negligent for the company to permit the platform to become overcrowded, it was negligent for the decedent to stand there. This argument implies that the decedent knew as much about the situation and danger as the defendant, whereas it was not shown and cannot be presumed that he was ever on a street car before, or that he was acquainted with the grade, the method of operating the brakes, or with any fact, aside from the crowded condition of the platform, which might expose him to danger. The company, of course, is presumed to have known the situation as it actually existed. Moreover, the argument ignores the legal obligation of the defendant, upon which the decedent had the right to rely, to exercise a high degree of care to "make the platform safe and secure for his occupation." Thus it is apparent that the argument, so plausible upon its face, is founded upon a presumption which does not exist and disregards a legal obligation of the defendant upon which the decedent had a right to rely.

The counsel for the plaintiff, in hastily summing up before the jury, inadvertently went beyond even the wide latitude allowed in such addresses and charged, in substance, that the defendant maintained a school for perjury to instruct witnesses how to swear falsely in its interest.

A verdict should be found only on the law and the evidence. Appeals to prejudice or passion, and the statement of facts neither proved nor presumed, have no place in a trial conducted according to the rules of the common law. The statement in question was calculated to arouse prejudice and lead the jury away from the evidence. It was not warranted even if similar remarks had been made by the defendant's counsel, which is suggested but not shown by the record. It would have justified the trial court or the Appellate Division in exercising the great power of dealing with the facts, which is intrusted to them but not to us, by setting aside the verdict and granting a new trial. The Court of Appeals, however, can reverse

only on an exception taken to a ruling of the court, and no exception relating to the subject raises an error that we can review.

The plaintiff's counsel was permitted to finish his address without any objection. The court was not asked to take any action or make any ruling until after the charge had been delivered. The remedy of the defendant was to move promptly for directions to counsel to desist, and to the jury to disregard. As was said by the Supreme Court of the United States: " It is the duty of the defendant's counsel at once to call the attention of the court to the objectionable remarks and request its interposition, and, in case of refusal, to note an exception." (*Crumpton* v. *United States*, 138 U. S. 361, 364.)

The defendant's counsel, however, did not ask the court to interpose, or to tell the jury to pay no attention to the mischievous remark, but waited until after the charge, when he called attention to the subject for the first time by excepting to the language used by counsel in summing up. This was not the subject of an exception, for an exception can properly be taken only to a ruling of the court, or to a refusal to rule. The court should first be asked to rule in accordance with the law which the counsel deems adapted to the occasion, and in case of refusal an exception will lie. (*Dimon* v. *N. Y. C. & H. R. R. R. Co.*, 173 N. Y. 356, 358.)

Finally, however, the defendant's counsel moved to withdraw a juror on account of the improper observation, but the motion was denied and he excepted. This was not the proper remedy, for leave to withdraw a juror is a favor, not a right, and has always been held to rest within the sound discretion of the court. Matters of discretion are reviewable by the Appellate Division, but not by us. As was said by Judge EARL in a late case : " It is now claimed that the trial judge erred in permitting the case to go before the jury which had heard the objectionable remark. The remark was undoubtedly an improper one, but the refusal of the court to grant the defendant's motion (to withdraw a juror) was not a legal

error reviewable in this court. The motion was addressed entirely to the discretion of the court, which could grant or refuse it, taking into consideration the circumstances surrounding the case." (*Chesebrough* v. *Conover*, 140 N. Y. 382, 388.)

I find no error in the record that we have the power to correct, and hence the judgment appealed from should be affirmed, with costs.

Cullen, J. I vote for the affirmance of this judgment. I do not take issue with the chief judge of the court in the proposition that a passenger who causes the danger by which he is injured cannot complain of the injury. It is necessary in the management of street cars that the brake from time to time should be operated and it requires room for the driver or motorman to use it. When a passenger takes his stand on the platform of a car I think he assumes, not the exceptional but the natural and usual risks of his position, such as the jolts and jars from which a car propelled, even over the best of tracks, is not entirely free. So, also, he should see that he keeps out of the way of the brake when it is necessary to apply it. If a passenger will insist in getting on the crowded platform of a car, so far as the position is dangerous from the presence of the crowd and the natural incidents of the operation of a car to which I have alluded, he takes the risk of those dangers, though not of exceptional ones. So, in this case, if the deceased had got on the front platform when it was so crowded that in the application of the brake in the ordinary manner it was likely to strike him, I should think he could not recover. But the evidence tends to show that when he was received as a passenger there was plenty of room on the platform and that he could have remained there safe from the injury which caused his death. If so, then the negligence of the defendant was in suffering the platform to subsequently become too crowded for safety.

Parker, Ch. J. (dissenting). The defendant's evidence that plaintiff's intestate, Cattano, fell while attempting to step

off the car was contradicted by one of plaintiff's witnesses on cross-examination, who said that the brakeman "forced his way to put on the brake, and almost pushed me as well as pushing the young fellow off the other end." Considered with the rest of the testimony of this witness and the testimony of plaintiff's other witnesses, the conclusion might well be reached, I think, that the witness did not see Cattano pushed off, but inferred that he must have been, from the general situation and the result of it. The jury, however, had the right to give such value to his evidence as they deemed it worth, and we cannot say but they gave to it entire credit, and, therefore, must assume that they did.

Assuming the jury did give entire credit to this witness' testimony, we find that Cattano was pushed off the platform by the surging of others against him or by the force of the brakeman's arm as he applied the brake to check the car on a downward grade. There is no evidence that the brakeman did either more or less than his duty, or that what he did was done in an unusual way. This statement is quite sufficiently supported by the comment of the distinguished counsel for the plaintiff in summing up to the jury: "Who says the driver was seriously at fault? We haven't intimated that," and this he followed with a statement that there was fault in overcrowding the platform.

Well, if there were fault in overcrowding, did not Cattano contribute toward it? There were at the most eight men on the platform, and he furnished, therefore, one-eighth of the overcrowding. And he continued to furnish it after he had a chance to go in the car, according to the plaintiff's witness Peck, who stood beside and talked with Cattano on the front platform until the car reached Lexington avenue. He says: "I went into the car at Lexington avenue. I went into the car when people got off and made room on Lexington avenue. * * * People were going out of the car and the platform was being relieved. Then I went into the car. * * * I probably went in three or four feet. People crowded in after me. There were people between me and the door of the car

at the time." As Cattano stood beside Peck, he could have gone into the car and been one of those standing behind him, but he elected to stay where he was, swelling by one-eighth or one-sixth the crowd on the platform. And it is now contended that the law permits a jury to say that in doing so he was not guilty of negligence, but at the same time to say that the conductor — who does not appear from the evidence to have been on the platform prior to the accident — was guilty of negligence in permitting the platform to be crowded.

In other words, one who merely permitted overcrowding is negligent in not apprehending danger therefrom, while one who contributed his person to the overcrowding is free from negligence contributing to his own injury.

Such a result is clearly illogical and ought not to stand unless commanded by authority covering precisely such a state of facts.

In *Lehr* v. *Steinway & H. P. R. R. Co.* (118 N. Y. 556) the plaintiff was forced from a platform and injured and a recovery was sustained. But the facts were different from this case. The plaintiff entered the car and secured a seat for his wife, who was lame, and then retired to the rear platform, where, owing to the crowd, he was obliged to stand on one of the steps. Seeing that the front platform was less crowded he asked the conductor to stop the car so he might go to the front platform. Receiving no reply, he stepped from the rear platform at about the same time as the conductor and walked to the front platform, his disclosed purpose and his action not being objected to by either the conductor or driver. The front platform was so crowded that he did not fully accomplish his purpose, as he only succeeded in getting one foot on the platform, the other being on the step. So he clung with his right hand to the rail of the dash and with his left to the hand-rail at the end of the body of the car. A movement of the passengers broke the hold of his right hand, which he was unable to regain. Before he fell, however, he called upon the driver to stop the car, which was not done until after he had fallen and the car had passed over one of his legs. This court

said : "The evidence in respect to the speed of the car, and the circumstances under which the plaintiff attempted to enter on the front platform, would not have justified the court in ruling, as a matter of law, that the plaintiff contributed to his own injury by making the attempt."

A very different case from this, where, as we have seen, Cattano rode upon the front platform for a long time with full knowledge of the extent of the crowding, making no attempt to enter the car when the man standing next to him and others on the front platform did so.

In *Willis* v. *Long Island R. R. Co.* (34 N. Y. 670) the plaintiff, while riding upon a platform was injured by a collision, a danger which he had no reason to apprehend, and, therefore, it could not be said, as a matter of law, that he was careless in not guarding against it.

In *Graham* v. *Manhattan Ry. Co.* (149 N. Y. 336) while the plaintiff's injury would not have happened had not the platform been crowded, yet it would not have happened had not the defendant's employee had an altercation with a passenger and struck him, the effect of which was to cause a movement of the crowd upon the platform which tended to crowd the plaintiff from the train. In order to save himself he made a quick, involuntary movement with his left hand to grasp the railing behind him, and his arm was caught between the railing of the car upon which he was riding and those on the car immediately in the rear, as they came together in rounding a curve. And this court properly held the action of the employee in striking the passenger to be an element tending to render the question of contributory negligence one for the jury, inasmuch as he had a right to assume that the company's servants would cause no unusual disturbance of the crowd, and further that he had a right to assume that the company's cars were so constructed as not to render his position dangerous from their proximity to each other in passing over any portion of the road.

In *Nolan* v. *Brooklyn City & N. R. R. Co.* (87 N. Y. 63) the plaintiff while standing on the front platform of a street car

— no other person being on it except the driver — was thrown off because of the action of the driver in suddenly whipping one of the horses, which plunged under the blows, occasioning a jar which, coming without warning, threw him from the car. The testimony showed that the defendant was accustomed to allow men smoking to ride on the front platform, and plaintiff went there because he was smoking. The court necessarily held that the plaintiff was not guilty of contributory negligence as a matter of law in accepting and acting upon the custom of the defendant.

In *Ginna* v. *Second Ave. R. Co.* (67 N. Y. 596) the car was so crowded that plaintiff's intestate could not enter it without great discomfort and so he stood upon the platform with his back against the body of the car. The platform was not crowded, but a switch having been left open the car ran off upon it, producing a violent jolt, which threw the plaintiff's intestate and the other passengers who were standing on the platform off the car. The negligence of the defendant was conceded, and, of course, it was held that the question of contributory negligence was for the jury, who would not have been justified in holding that the plaintiff's intestate could have anticipated an open switch.

It will readily be seen that the authorities above referred to — and they are the leading ones brought to our attention — are all readily distinguishable from the one under consideration.

In this case the platform was crowded with men who, rather than wait for the next car, were taking their chances on a crowded car, as men do every day; and if it be negligent for a company to permit men to crowd upon a platform because some one may be hurt if the crowd surge for some cause, it is equally negligent on the part of the man who, in possession of his faculties, insists upon adding his person to an already overcrowded platform.

It is impracticable in our large cities to furnish seats for all persons in the street cars during what are known as "rush hours," and during those hours men insist upon riding

37

upon platforms in order to gain time, and in so doing they contribute something toward the risk of injury to some one, in case of the surging of the crowd from some one of the many causes that arise from time to time; and if one of the last to crowd himself on, obtaining an insecure and unsafe position, be injured, without any other fault on the part of the company than that it permitted a crowd on the platform — which is this case — then there should not be, it seems to me, a recovery by the man who insisted upon being a part of the crowd.

Whether there be overcrowding on a platform is a question of fact for the jury, but they are not to determine the legal effect of overcrowding; that is a question of law for the courts.

It has not been held so far that it is a negligent act on the part of a street railroad to permit passengers to ride on the front platforms of cars, or to allow as many of them to ride there as can get secure positions; and I think it should not be so held in view of the necessities of the case.  But if my view should not obtain, then it follows it should be held, as matter of law, that to permit the platform and steps to be crowded constitutes negligence, leaving the jury in case of controversy on that point to determine whether it was crowded.  And if the fact of overcrowding be conclusively established — as in this case — it must follow that the persons on the steps or on the outside of the crowd who are thrown off contribute, as matter of law, to the result, for they not only helped to create the overcrowded and dangerous condition, but in addition placed themselves in the most hazardous of all the positions on the platform.

The judgment should be reversed.

O'Brien and Martin, JJ. (and Cullen, J., in memorandum) concur with Vann, J.; Haight, J., concurs with Parker, Ch. J.; Gray, J., not sitting.

Judgment affirmed.