[No. 4965. Decided September 21, 1904.]

ALEXIA HALVERSON, *Respondent,* v. SEATTLE ELECTRIC COMPANY, *Appellant.*[1]

CARRIERS—NEGLIGENCE—SPEED OF STREET CAR—MOTORMAN AS EXPERT WITNESS. Upon an issue as to negligence in running a street car around a curve at a dangerous rate of speed, a motorman is qualified as an expert to answer questions as to what rate of speed would, in his opinion, be safe, where he testifies that he was familiar with the road throughout its entire length and knew the curve, that he had been a motorman on this line for six or seven months, and was familiar with the speed of cars; the matter of qualification resting largely in the discretion of the court.

DEATH—DAMAGES TO WIDOW—EVIDENCE—EARNING CAPACITY OF HUSBAND'S BUSINESS—STATEMENTS IRRESPECTIVE OF BOOKS—BEST EVIDENCE. In an action by a widow for damages for the death of her husband, where the wife had been associated with him in, and was familiar with the amount of, his business, as a photographer, it is competent, upon the subject of the damages, for the wife to testify that he was earning about $2,000 per year,

[1]Reported in 77 Pac. 1058.

without producing the books, her estimate being based thereon and on her knowledge of the business, since the books, while the best evidence of their contents, are only secondary evidence of the income of the business.

CARRIERS—NEGLIGENCE—SPEED OF STREET CAR—EVIDENCE—EXPERIMENTS—SIMILARITY OF CONDITIONS—DISCRETION. Upon an issue as to negligence in running a street car around a curve at a dangerous rate of speed, it is not an abuse of discretion to refuse to admit the result of experiments made with the same car at a time when the conditions were different from those existing at the time of the accident, in that the time of day, the load on the car, the load on the electric current, and the condition of the rails were different; and the fact that the conditions were more favorable to the plaintiff than to the defendant does not make such exclusion error, since the same was within the sound discretion of the court, to be reviewed only for abuse.

APPEAL—REVIEW—COMMENT ON THE EVIDENCE—HARMLESS ERROR. Unlawful comment upon the weight and value of evidence which is excluded, made at the time of ruling upon an objection thereto, is harmless.

CARRIERS—NEGLIGENCE—DUTY OF STREET CAR COMPANY TO PROVIDE PASSENGERS WITH SEATS—INSTRUCTIONS. In an action against a street car company for negligence in the running of its car, resulting in the death of a passenger who was standing upon the platform, it is not error to instruct that it is the duty of a carrier to furnish passengers with seats, and not negligence for the passenger to stand on the platform if all the seats were occupied, the same principle with reference to seats applying to street cars as to steam cars, and it not being negligence *per se* for a passenger to ride on the platform.

SAME—ASSUMPTION OF FACTS. Such an instruction is not erroneous as assuming that the deceased was compelled to stand on the platform, especially where there was evidence that the seats were all occupied and that there was but little standing room inside.

CARRIERS—NEGLIGENCE—PASSENGER THROWN FROM STREET CAR—FAILURE TO PROVIDE GUARDS. In an action against a street car company for causing the death of a passenger who was thrown from the car while rounding a curve, it is not error to instruct the jury to the effect that the company would be liable for negligently failing to provide a guard or gate, and to refuse to instruct that it was under no obligation to provide guards because not required to do so by statute, where it appears that the failure to

provide a guard or gate was not the only element of negligence complained of, but the accident was due thereto in connection with negligence in running an overcrowded car around a curve at a dangerous rate of speed while passengers were standing on the platforms.

DAMAGES—DEATH OF HUSBAND—EXCESSIVE VERDICT.  A verdict for $20,000 for the death of plaintiff's husband will be held excessive and reduced to $10,000, where it appears that his business as a photographer, in which the wife was associated, produced a net income of $2,000 per year, that she continued the business, producing sufficient for her needs, and that there were no children to support.

Appeal from a judgment of the superior court for King county, Griffin, J., entered June 30, 1903, upon the verdict of a jury rendered in favor of the plaintiff, for $20,000 damages for the death of plaintiff's husband, occasioned by a fall from a street car.     Affirmed on condition of remitting $10,000.

*Struve, Hughes & McMicken,* for appellant, to the point that the motion of the car in passing around a curve does not constitute negligence, and must be guarded against by passengers, cited:     *Moser v. South Covington etc. St. R. Co.* (Ky.), 74 S. W. 1090; *Ayers v. Rochester R. Co.,* 156 N. Y. 104, 50 N. E. 960; *Hite v. Metropolitan St. R. Co.,* 130 Mo. 132, 32 S. W. 33, 51 Am. St. 555; *Blakney v. Seattle Electric Co.,* 28 Wash. 608, 68 Pac. 1037.

*Walter S. Fulton, Vince H. Faben,* and *T. D. Page,* for respondent.

MOUNT, J.—Plaintiff brought this action against defendant to recover damages for the death of her husband, N. P. Halverson.     She avers in her complaint, that on the 26th day of December, 1902, the said N. P. Halverson became a passenger on one of defendant's cars running from the city of Seattle to Ballard; that the defendant failed and neglected to provide a gate or railing

around the platform of said car; and that defendant negligently permitted the said car to become overcrowded with passengers, so that the said N. P. Halverson was prevented from obtaining a seat, and was compelled to stand on the platform of said car.    She makes the following allegation of negligence:

"That at Stewart street and Western avenue, in the city of Seattle, on the line of defendant's road leading to Ballard, there is a sharp curve and turn; that when said car reached said point, to wit, at about 5 :15 P. M. on said day, the motorman in charge of and propelling the same negligently and carelessly failed and neglected to slacken the speed of said car, and negligently and carelessly turned on a heavy current of electricity, without warning or notice to the said N. P. Halverson, and while the said N. P. Halverson was in all things exercising due care, thus negligently and carelessly causing said car to start forward violently and to run around said bend and curve rapidly and with a lurch and jerk, thereby throwing said N. P. Halverson from said car to the ground and inflicting upon the said N. P. Halverson mortal wounds, from which said mortal wounds the said N. P. Halverson languished and languishing died, in the city of Seattle, Washington, on the 27th day of December, 1902."

She further avers that the deceased was a photographer, having an established business in the town of Ballard, and was able to earn, and was earning, in the prosecution of his business, the sum of $2,000 per year.    Defendant, by its answer, put in issue the allegations of negligence, and those in relation to the earning capacity of the said deceased, and the damages suffered by plaintiff, and pleaded the following affirmative defense, to wit:

"That on the 26th day of December, 1902, the said N. P. Halverson boarded one of defendant's cars on Western avenue at or near its intersection with Pike street, which said car was bound to the town of Ballard; that

said N. P. Halverson entered said car in the front vestibule thereof, and remained standing near the step of said car; that he failed and refused to occupy a seat vacant in said vestibule, but carelessly and negligently stood near the step of said car, smoking a cigar, and without holding to any of the bars or rods placed there for that purpose; and while said car was proceeding along one of the curves in the track, rendered necessary by the irregularity of the street, said N. P. Halverson fell from said car to the street and received injuries from which he subsequently died, and this defendant avers that the injuries and damage, if any, sustained by the plaintiff, were caused and contributed to by the aforesaid negligent acts of the said N. P. Halverson."

The foregoing affirmative defense was put in issue by the reply.

The undisputed facts developed on the trial of the cause are as follows: The plaintiff's husband, N. P. Halverson, had, for about three years, been engaged with his wife in conducting a photograph gallery, in the town of Ballard. Defendant owned and operated a street railway line between the city of Seattle and Ballard, which line, as it leaves the city, runs along Western avenue, starting at the foot of Columbia street and extending northerly toward Ballard. After reaching Pike street there is a grade of about six per cent to Stewart street, the hill terminating at Virginia street, about one block further on. About 5:15 o'clock P. M., on the 26th day of December, 1902, the said N. P. Halverson offered himself as a passenger on one of the defendant's cars, at the intersection of Pike street with Western avenue. At this time the seats within the body of the car were filled, and persons were standing in the car, although there was standing room therein for more. Said Halverson was smoking, and boarded the front platform or vestibule of the car. There is no evi-

dence showing the motive of said Halverson in entering
the vestibule, except as above stated.

The car was about forty-two feet long, and had a vesti-
bule at each end.     These vestibules were exactly alike.
They were entirely cut off from the body of the car by a
partition running from side to side.     Immediately in front
of this partition was a seat, running crosswise the entire
width of the car and facing the front.     This seat was
seven feet nine inches long, capable of holding five or six
persons.     Within the vestibule, and in the extreme front
of the car, were the motor box and brake, between which
stood the motorman.     The vestibule was entered at the
opening on either side thereof.     Halverson entered the
front vestibule at the entrance or opening on the east side,
the car facing north.     At the time he entered, four per-
sons were sitting on the seat in the vestibule, two women
and two men, the women being on the end where Halver-
son entered.     Two or three men were also standing in the
vestibule.     Halverson stood at the entrance where he
boarded the car, with his back to the street and facing
the vestibule.     He remained in that position until he fell
from the car.     He had a package in one arm, and was
smoking a cigar.

From Pike street to Stewart street the distance is a little
more than a block.     At the intersection of Stewart street,
Western avenue, along which the car was running, changes
its direction northerly, and at this point the tracks of de-
fendant's line curve to conform to the direction of the
avenue.     This requires a double or compound curve, both
being curves of large radius.     After leaving Pike street,
the car proceeded up the hill to Stewart street, and, while
passing through the curves, the said Halverson, at the
further curve, fell from the car to the street, striking his

head and receiving injuries from which he died the following day.

The photograph business conducted by plaintiff and her husband yielded an income of about $2,000 a year. Halverson had been in the photograph business for about ten years, in Chicago, Seattle, and Ballard, which covered the period of his married life, and the accumulations of those years consisted of a small building on leased land, used as a photograph gallery (in which they also lived), together with the photographer's equipment and supplies. Plaintiff and her husband had no children.

At the close of all the testimony, the defendant challenged the sufficiency of the evidence to entitle the plaintiff to recover. This challenge was denied, and exception taken. The case was then submitted to a jury, which returned a verdict in favor of plaintiff for $20,000. A motion for new trial was denied, and judgment entered upon the verdict. Defendant appeals.

Appellant first insists that the court erred in overruling objection to questions propounded by respondent to the witness J. R. Dickson, as follows:

"Q. At what rate of speed, in your opinion and judgment, ought a car to be run into that curve in order to be operated with safety to passengers on it, basing your answer upon your experience as a motorman upon that road?"

"Q. You may state whether, in your judgment and opinion, based upon your experience as a motorman upon that road, a car with safety to passengers can be run into that curve at a rate of speed at from six to eight miles per hour."

These questions were objected to, upon the ground that the witness had not shown himself competent to testify. The witness had testified, that he was familiar with the road

throughout its entire length, and knew the curve; that he had been a motorman over this same line for six or seven months; that he was familiar with the speed of cars; and that, in his judgment, the car was running through the curves at the time of the accident at between seven and eight miles per hour. We think this evidence qualified the witness to answer the questions. There seems to be no well defined rule by which to measure the qualifications of an expert witness, and it rests largely in the discretion of the trial court to determine them. 12 Am. & Eng. Enc. Law (2d ed.), p. 427; *Traver v. Spokane Street R. Co.,* 25 Wash. 225, 65 Pac. 284. Appellant argues other grounds for the exclusion of these questions, but they were not raised by the objection made at the time, and for that reason we shall not consider them. *Gustin v. Jose,* 11 Wash. 348, 39 Pac. 687.

Appellant next contends that the court erred in permitting Mrs. Halverson to testify, over defendant's objection, in respect to the income from their business, without producing the books. After Mrs. Halverson had testified that she was associated with her husband, had helped him in the business, and was familiar with the amount of business he was doing, and knew what he was earning prior to his death, she stated the amount at "about $2,000 per year." She thereupon testified as follows:

"Q. What did you base your estimates upon? A. On the books. Q. And the amount of business that you took in? A. Yes, sir. .Q. And the receipts that you derived from it—revenue? A. I kept the books."

Upon cross-examination she testified as follows:

"Q. Well, do you know what your total income was? I. suppose your books would show it, would they not? A. My books will show. They will show it just to a penny. Q. That is what I thought would probably be

the case.    But you don't know yourself just how much you did take in—how much was the gross receipts of your business?    A.  No, sir."

While the witness stated that she based her estimate upon the books, yet it is clear, from her whole testimony, that she meant she could not state the exact amount of earnings of the business, but that the books would show exactly. It is further clear that she based her estimate upon her knowledge of the business derived from her association therewith, and from the fact that she kept the books.    The books, of course, are the best evidence of their contents, but the contents of the books kept by the witness are not necessarily the best evidence of the income of the business. The witness might be heard to say that she had not entered every item of income thereon, or that entries were incorrect in certain particulars.    In other words, the books, being private memoranda, are secondary evidence, and for that reason the bookkeeper, or any other person with knowledge of the income of the business, could be heard to state the facts independent of the books.    *Cowdery v. McChesney,* 124 Cal. 363, 57 Pac. 221; *Elderkin v. Peterson,* 8 Wash. 674, 36 Pac. 1089.    It was therefore not error for the court to refuse to strike the evidence of the witness.    Appellant also contends that the evidence in regard to the earnings of the deceased prior to his death was incompetent; but, under the rule in *Walker v. McNeill,* 17 Wash. 582, 50 Pac. 518, and *Turner v. Great Northern R. Co.,* 15 Wash. 213, 46 Pac. 243, 55 Am. St. 883, this evidence, which tended to show his earning capacity and income immediately prior to his death, was competent.

Appellant next contends that the court erred in refusing to permit certain witnesses to testify to the results of experiments made by them in running the same car upon which the accident occurred through the same curve.    The

witnesses showed that these experiments were made under different conditions from those existing at the time of the accident.    They were made at a different time of day, when the electric current would have less load and, therefore, more power.    The experiments were also made with no load upon the car, and upon a dry rail, while the car at the time of the accident was heavily loaded with passengers and the rails were wet.    It is argued by appellant that the conditions existing when the experiments were made were more favorable to the respondent than the conditions existing at the time of the accident, and that the court, therefore, should have permitted the results to be shown, notwithstanding the dissimilar conditions.    The general rule as laid down by Mr. Freeman, in his note on page 375 to *Chicago etc. R. Co. v. Champion,* reported in 53 Am. St. Rep., at page 357, is as follows:

"There has been, until within recent years, some hesitation in receiving evidence of experiments or demonstrations; but the rule is now established that evidence of the results of tests or experiments is admissible if based upon conditions similar to those existing in the case on trial. In all cases of this sort, very much must necessarily be left to the discretion of the trial court, but the exercise of its discretion will not be interfered with where it has not been abused.    From the liability to misconception and error, there can be no doubt that it is essential that the experiments or demonstrations should be made under similar conditions and like circumstances.    When this is shown as a foundation for the introduction of experiments as evidence, they ought to be admitted, and the court's exercise of discretion in admitting them ought not to be interfered with."

We have no doubt that this is the correct rule.    The fact that the conditions are more favorable to the test, or less favorable, ought not to change the rule that the experiments must be made under similar conditions and like cir-

cumstances. The similarity of the circumstances and conditions must be left to the sound discretion of the trial court, and determined by him, subject to review only for abuse. Where the conditions and circumstances are so different or dissimilar as to probably bring about different results, as they evidently were in this case, it is not an abuse of discretion to exclude the results of the experiments.

In passing upon the question of the admissibility of the evidence above referred to, the court said to counsel:

"I think that it already appears from the evidence that the amount of power upon these cars, during the time of climbing the hill, depends upon the number of cars that are climbing other hills and the number on the road. It seems to me that any tests that might be made would, on that account, be dissimilar from the conditions that prevailed at the time, and I do not think it is within the knowledge of any person to know where they were located, whether upon grades or off grades, so that any test at any other time would be of very little value, if any, in determining the operation of cars at one time or another."

Appellant now insists that this was a comment upon the evidence. The evidence of tests was excluded, and the statement of the court was made as his reason for excluding it. If the evidence had been admitted, and the court had then made the statement, it would no doubt have been a comment upon the weight of the evidence; but, where the evidence was excluded, the remarks of the court were harmless. Furthermore, no exception was taken upon the ground that the remarks of the court were a comment upon the evidence, and for that reason the point cannot be now made here for the first time. 8 Enc. Plead. & Prac., p. 272.

Appellant also insists that the court erred in giving instructions Nos. 6 and 8. Number 6 is as follows:

"You are instructed that it is the duty and obligation of common carriers for hire to furnish passengers with seats for their accommodation, and if you believe from the evidence in this case that the defendant received the said N. P. Halverson as a passenger, the said N. P. Halverson thereby became entitled to a seat, and if he was prevented from obtaining a seat by reason of the car being overcrowded, you are instructed that it was not negligence for said N. P. Halverson to stand or be upon the platform of said car, providing you believe that in standing upon said platform the said N. P. Halverson was exercising ordinary care and prudence, and would have been safe from injury if said car had been run in a careful manner."

The substance of the above instruction is repeated in instruction No. 8. It is first argued that there is no obligation to furnish passengers with seats upon ordinary street cars, and that the same rule does not apply to street cars as applies to steam railways; and, second, that the instruction assumes that there is evidence from which the jury might find that, owing to the crowded condition of the cars, the deceased was compelled to stand upon the platform. We cannot agree with either of these contentions of appellant. The obligation of street car companies to furnish seats for their passengers rests upon the same principle as that of steam railways, viz., the accommodation and safety of their passengers. No doubt swiftly moving steam railway trains are more dangerous to standing passengers than electric or other motor cars running less swiftly, and for that reason greater care is necessary upon steam railway trains. But the principle is the same in both cases. Both must care for the safety of their passengers. It would not be negligence *per se* for a street car company to fail to furnish a seat to each of its passengers, but, where seats are not furnished, and passengers are permitted or required to stand upon cars, greater care is required in the operation

of its cars than where all are provided with seats.     Nor is
it negligence *per se* for a passenger to ride or stand upon
the platform of a car.     *Graham v. McNeill,* 20 Wash. 466,
55 Pac. 631, 72 Am. St. 121, 43 L. R. A. 300; *Thirteenth
etc. R. Co. v. Boudrou,* 92 Pa. St. 475, 37 Am. Rep. 707;
*Cattano v. Metropolitan St. R. Co.,* 173 N. Y. 565, 66
N. E. 563.

We do not think the instructions are subject to the criti-
cism that they assume that there was evidence from which
the jury might find that the deceased was compelled to
stand upon the car or the platform.     But, if they may be
said to assume such fact, the assumption was correct, be-
cause it appears that there was but little standing room
inside the car, and that the seat in front, which was seven
feet nine inches long, was occupied by four persons, and
two or three other passengers were standing on the plat-
form; and, when deceased boarded the car, two women
were on the end of the seat next to where the deceased was,
and he made a remark, in substance, that he "did not want
to climb over ladies."

Appellant next contends that the court erred in giving
the following instruction:

"You are instructed that, if you believe from a prepon-
derance of the evidence that the deceased, N. P. Halverson,
was permitted to ride by the defendant upon the platform
of defendant's car; that the defendant carelessly and negli-
gently failed and neglected to provide and have on said car
a gate, railing or other protection around the platform
thereof, and that thereby said car was rendered an unsafe
and dangerous conveyance in that passengers on said plat-
form were unprotected and liable to be thrown therefrom,
and you further believe that defendant permitted said car
to become overcrowded with passengers, and failed to pro-
vide said Halverson with a seat on said car, but permitted
him to be crowded and jostled by other passengers likewise
upon said platform, and if you further believe that said

car ran into said curve at a high rate of speed, without
warning or notice to said Halverson, that thereby said car
was caused to lurch and jerk as it went around said curve,
causing said Halverson to be thrown therefrom, and to re-
ceive injuries of which he died, then your verdict will be
for plaintiff," etc;

and in refusing to give the following instruction requested
by appellant:

"You are further instructed that there being no statute
or law of this state requiring street car companies to pro-
vide gates and have them closed on the front platform of its
cars, the fact, if you should so find, that at the place where
the said N. P. Halverson entered said car upon the front
platform there was no gate closed behind him, would not
constitute negligence upon the part of the defendant com-
pany."

This latter instruction is, no doubt, correct when applied
to a case where such is the only or principal negligence
complained of.   But in this case there were other elements
of negligence, the principal one of which was running the
car at a high rate of speed into a curve, while passengers
were permitted to stand, and were standing, and had no
means of knowing the danger, and were not warned to pro-
tect themselves against the danger of being thrown from
the car.   It may not be negligent of railway companies
to fail to provide railings or gates to prevent passengers
from falling or being thrown from the cars, where they
are run at the usual rate of speed upon straight or even
tracks, where no such protections are usually required;
but, when an unusual or high rate of speed is maintained
around curves, or over rough and uneven roads, then ordi-
nary diligence requires such safeguards, even if they are
not required by positive statute.   For this reason, we think
the instruction requested would have been misleading, as
applied to the facts in this case, and we also think the

instruction given fairly stated the law applicable to the facts. Instruction No. 10 requested by appellant in reference to contributory negligence was given in substance, and it was therefore not error to refuse the one requested.

The next error complained of is that the court erred in overruling defendant's challenge to the sufficiency of the evidence. We have gone carefully over the whole of the evidence and, without extending this opinion by a discussion thereof, it is sufficient to say that there was enough in the case to warrant the jury in finding a verdict for the plaintiff.

Appellant contends further that the verdict of the jury is excessive. In this we agree. In cases of this kind, the plaintiff is entitled only to actual damages, as nearly as the same can be measured in money. It is difficult, of course, to measure in money the damages which the respondent sustained by the loss of her husband. She lost his society and comfort and the means of support which he provided. Society and comfort are largely sentimental, and incapable of accurate valuation. There were no children left for respondent to provide for. The means of support which the deceased provided were not large. The evidence shows that the only source of revenue was from their photograph business, conducted by both of them, the net income of which was $2,000 per year. Respondent continues the business, earning sufficient for her needs, but with what actual returns does not appear. For all the damages which respondent has suffered, we are satisfied that $10,000 is ample to reward her, and that $20,000 is so out of proportion to the actual damages as to show, upon its face, prejudice of the jury.

For this reason the judgment is reversed and remanded, unless, within thirty days from the date of the filing of

this opinion, the respondent remits the excess of $10,000, in which event the judgment will stand affirmed. Appellant to recover costs of this appeal.

FULLERTON, C. J., and DUNBAR and ANDERS, JJ., concur.