JOHN LAUGHING, Respondent, v. UTICA STEAM ENGINE & BOILER WORKS et al., Appellants, et al., Defendants.

Fourth Department, May 10, 1962.

*Tucker & Bisselle* (*Bartle Gorman* of counsel), for Utica Steam Engine & Boiler Works, appellant.

*O'Brien, Donovan & Plante* (*Charles J. O'Brien* of counsel), for Central Steel Erecting Co., Inc., appellant.

*Albert Jakobson* (*John F. Lawton* of counsel on the appeal), for respondent.

*Per Curiam.* The summation of plaintiff's trial counsel, not counsel for plaintiff on this appeal, so far exceeded the bounds of propriety that the judgment appealed from may not stand. The first six and one-half pages of his summation deal almost exclusively with personalities and extraneous matter which in no way relate to the evidence or the theories and issues involved. At the opening of his summation counsel gave an obvious demonstration of flattery of the Trial Justice and alleged affection for the city in which the trial took place which only could have been calculated to direct the jury's consideration from the ultimate determination of the rights of the parties. By reason of the latitude permitted, the extraneous matters thus presented to the jury were highly improper and beyond the scope of proper summation. (*Simpson* v. *Foundation Co.,* 201 N. Y. 479; *Cattano* v. *Metropolitan St. Ry. Co.,* 173 N. Y. 565; *Williams* v. *Brooklyn El. R. R. Co.,* 126 N. Y. 96; *Cherry Creek Nat. Bank* v. *Fidelity & Cas. Co.,* 207 App. Div. 787, 790–791; *Zaulich* v. *Thompkins Sq. Co.,* 10 A D 2d 492, 497; *Kohlmann* v. *City of New York,* 8 A D 2d 598; Ann. 68 A. L. R. 2d 999 *et seq.*)

Counsel's comments about his early history and the privations and difficulties which he encountered in becoming a lawyer could not remotely have any bearing on the issues. References to Perry Mason and " the beauty of Della Street and that handsome blond boy, whose name I forget, whose mother is Hedda Hopper "; to " Earle Stanley Gardner and his beauteous lair "; to " the immortal bard " and characters from Romeo and Juliet; to Andrew Carnegie, Robert Fulton, Andrew Jackson, Abraham Lincoln, Thomas Edison, Alfred Smith and Christopher Columbus; to a news article then current involving one Martin Greene, " an actor who fell into an elevator shaft " where " Some interne came and took off his leg with a penknife "; to flattering remarks about various " wonderful restaurants " in the Utica area; to his own client as " this poor slob "; fall so far short of the dignity and proper professional conduct of a lawyer that the mere recitation of them should be the cause of great concern by those who respect the practice of the law as an honorable and noble calling. Tactics of this kind explain why this negligence action required, in our judgment unnecessary, 13 full days of trial and a printed record of over 1,400 pages.

Plaintiff's counsel stated: " the best I can say of their clients is they are not entitled to be represented by such fine, upstanding men as they respectively are ". He further stated: " Central Steel is adequate to respond, we feel, in damages inflicted here "; " Central Steel, a big firm with plenty of rolling stock and a background of work over many years ". Allusion to a defendant's ability to pay damages is improper. (See Ann. 32 A. L. R. 2d 9 *et seq.*)

Plaintiff's counsel further informed the jury that " some times you put the Judge on trial. If you get enough conflict there you get a reversible record and you get another crack. For a time they tried to put me on trial." The remark was clearly improper. He further stated: " This suit asked for $100,000. That is cheap at that price as we will demonstrate when we go over the injuries." He further stated: " Utica Steam was being sued for $100,000, a paultry [*sic*] sum compared to the damages inflicted ". Counsel went on: " We didn't ask for two hundred, we asked you for 100,000 for the devastating damage wrought this poor soul, and now let's prove that he is entitled to it." Later he stated: " Now, mind you, we are not asking you for 25,000, we don't want 50,000, we don't want 75,000, we want 100,000 here to compensate this man and take care of him for the rest of his days, fat or not." He then proceeded to put a price tag on each injury: " The arthritis, we'll take that for 15,000; this permanent damage involving everything, most of the

back, 30,000; this locked knee, short one and a half inches — there was a ruler here — one and a half inches, 50,000. The ribs, the arthritis, the surgery. I won't burden you reading this extensive procedure. I want you to bear in mind what has happened to the dollar." It would serve no useful purpose to quote many other improprieties which appear in the summation. Exception was duly taken to the extensive use of X rays, specially marked in red by counsel, during the course of the summation and the enumeration of the several injuries and separately assessing a value to them. The motion for a mistrial made at this juncture by defendants should have been granted.

Attorneys are officers of the court, required by their oath and the Canons of Ethics to uphold the dignity and decency of our profession. Any conduct on the part of an attorney which serves to cheapen the image of the lawyer and to make a slick game of the determination of the rights of individuals, weakens and destroys the very pillars of the administration of justice. It is a remarkable feat of articulation that counsel could have told the jury that " the purpose of the law is a search for truth and justice " and to have conducted himself in a manner calculated to impede and circumvent the search for truth. How helpful was counsel in this " search " when he told the jury " My voice is breaking. That happened when I was thirteen." All litigants, and particularly one as seriously injured as the plaintiff, deserve more dedication to the fundamental principles of advocacy than was demonstrated by plaintiff's trial counsel.

Upon the subject of the length of the trial it should be added that much time was wasted by the tactics adopted by both trial counsel for plaintiff and the attorney for defendant, Utica Steam Engine & Boiler Works. The continued repartee and side remarks by and between them not only unnecessarily prolonged the trial but were partially responsible for bringing about a situation where the case was submitted to the jury at approximately 4 o'clock on the day before Thanksgiving. The impatience of the jury was ill concealed as evidenced by their remarks when court recessed in the middle of the previous afternoon so that the summations and charge could take place the same day. If these extraneous, if not prejudicial matters, had been omitted the case could and should have been submitted to the jury long before. It, of course, may not be determined whether or not the obvious eagerness of the jury to be freed for the holiday had any bearing on the scant two and a half hours they devoted to considering the evidence, the presentation of which had stretched from November 9 to 25.

It is unfortunate that the issues must be retried for the reasons herein set forth. Justice requires that a new trial be had in which there must not be a repetition of what may be expected in the theatre but never in the courtroom.

WILLIAMS, P. J., BASTOW, GOLDMAN, McCLUSKY and HENRY, JJ., concur.

Judgment and order unanimously reversed on the law and facts and a new trial granted, with a separate bill of costs to the appellants to abide the event.