[No. 11819. Department One. August 11, 1914.]

CLARA HISCOCK, *Appellant*, v. A. A. PHINNEY, *Respondent*.[1]

MUNICIPAL CORPORATIONS—USE OF STREETS—NEGLIGENCE—AUTOMOBILES—LAW OF ROAD—INSTRUCTIONS. In an action for the death of a minor through a collision with plaintiff's automobile while riding a bicycle, instructions that the defendant was not necessarily confined to the use of the right-hand side of the street, and that neither the defendant nor deceased had a superior right to the use of the street but that their rights were equal at the place of the accident, are prejudicial, in view of an ordinance requiring vehicles to keep as near the right-hand curb as possible, and the jury should have been instructed that the defendant would be guilty of negligence if they found he was not driving as near the right-hand curb as possible; since, under the ordinance, the boy had a superior right to the use of the right-hand side of the street, and had a right to assume that he would encounter no object traveling in his direction.

SAME—LAW OF ROAD—ORDINANCES—VALIDITY. An ordinance requiring vehicles to keep as near the right-hand curb as possible is not in conflict with Rem. & Bal. Code, § 5558, requiring travelers on the highway to turn to the right on meeting; and the ordinance establishes the law of the road within the boundaries of the city.

SAME — VIOLATING LAW OF ROAD — NEGLIGENCE — PRESUMPTIONS. There is a presumption that defendant was guilty of negligence in driving his automobile on the left-hand side of the street at the time of the accident, in violation of a city ordinance.

TRIAL—INSTRUCTIONS—REQUESTS—NECESSITY. An omission of the court to adapt the instructions to a particular view of the case is not error, in the absence of a request therefor, Const., art. 4, § 16, providing that judges "shall declare the law," meaning that they shall declare the law applicable to the case in a general way.

DEATH—ACTION FOR WRONGFUL DEATH—PROXIMATE CAUSE—QUESTION FOR JURY. In an action for the death of a minor struck by an

[1]Reported in 142 Pac. 461.

automobile while turning a corner on a bicycle, the proximate cause
of the accident is for the jury, and defendant's negligence is not
established by the physical facts, as a matter of law, from the fact
that witnesses' testimony tended to show that certain skid marks
in the street and the finding of a box and its contents which were
carried on the bicycle showed that the automobile was traveling on
the wrong side of the street at the time of the accident, it being a
disputed question as to whether the skid marks were made by the
defendant's automobile, and there being no admitted physical facts
which could control or overthrow the verdict of the jury.

   EVIDENCE—OPINION EVIDENCE—RATE OF SPEED—COMPETENCY. A
witness may give his opinion as to the speed at which an automobile
was traveling, although he had never owned or operated one or
had made tests of speed thereby, the weight of the evidence being
for the jury.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered September 2, 1913, upon the ver-
dict of a jury rendered in favor of the defendant, in an ac-
tion for wrongful death. Reversed.

*C. J. Smith* (*Heber McHugh*, of counsel), for appellant.

*Brightman, Halverstadt & Tennant*, for respondent.

Gose, J.—This is an action to recover damages for the
death of a minor son of the plaintiff. The plaintiff alleges
that she was dependent upon the son for her support, and
that he met his death in consequence of the negligence of the
defendant, A. A. Phinney. Plaintiff has appealed from an
adverse verdict and judgment.

The casualty happened at or near the southwest corner of
39th avenue and East John street, in the city of Seattle.
Thirty-ninth avenue runs northerly and southerly, and East
John street runs easterly and westerly and terminates at the
avenue, both streets being twenty-four feet in width. The
avenue is winding. The boy was engaged in carrying and
delivering groceries and meat by means of a bicycle. The
respondent was driving a Lozier car, five feet in width, weigh-
ing 4,400 pounds, north along the avenue. The boy was rid-
ing east on John street. Both were traveling down hill. The

boy either had turned, or was in the act of turning, south into the avenue. There is a high embankment covered with shrubbery at the southwest corner of the avenue and street where the accident happened. The respondent and other witnesses testified that one traveling north on the avenue cannot see into East John street because of the high embankment and shrubbery. The respondent testified that he was driving about the center of the street, at a speed of seven or eight miles an hour; that, when he first saw the boy, he was six or seven feet distant, "coming from behind the bank," about three feet up John street and "six or seven feet off the southwest curb;" that he, respondent, applied his brakes and stopped his car within six or seven feet; that the boy was riding at a speed of from fifteen to eighteen miles an hour; and that the boy struck the car, bending the brass knob on the west rear door and buckling the rear fender over the left wheel.

A witness for the appellant testified that he arrived at the scene of the accident about forty minutes after it occurred; that he observed skid marks which commenced at the intersection of the streets and extended northerly a distance of about ninety feet, and that the west skid mark was from four to six feet from the west curb. This witness said that the east skid mark was lighter and extended for a less distance than the west mark; that he examined the defendant's machine shortly after the accident, and that the left rear wheel had a smooth tire and the right wheel had a corrugated tire. He further said that, if the respondent's car had new tires and skidded ninety feet, it should have left a mark on the tires. Another witness said the nearest skid mark was three or four feet from the west curb. The boy's father testified that the skid marks were about five feet from the west curb, and that they commenced about ten feet south of the corner. Another witness said that the skid marks commenced about ten or fifteen feet south of the corner; that they were three or four feet from the curb, and

continued about seventy-five feet, curving to the east or the right.

The respondent testified that he had new "Firestone non-skid" tires upon both rear wheels, and that the car did not skid. A witness for the respondent testified that he was engaged in the business of selling Firestone tires; that he examined the respondent's tires the morning after the accident; that they were new "Firestone non-skid tires;" that he saw no evidence that either tire had skidded; that "it would be pretty hard to skid;" and that if he had skidded ninety feet, the tire would be worn practically to the "fabric." Another witness testified in behalf of the respondent that he was an automobile man in the respondent's employ; that he put on "Firestone non-skid tires," two or three days before the accident; that there was no mark on the tires after the accident, and that it would not be possible for the car with such tires to skid ninety feet without leaving distinct marks or scars upon the wheels.

The respondent pleaded affirmatively, and the reply admitted, that an ordinance of the city of Seattle provides:

"Sec. 1. A vehicle, except when passing a vehicle ahead, shall keep as near the right hand curb as possible."

"Sec. 6. A vehicle turning into another street at the right hand shall turn the corner as near the right hand curb as practicable." Seattle Ordinance, No. 24,597.

The court instructed the jury:

"(10) The other ground of negligence charged in the complaint is that the defendant did run and drive his automobile to the left of the middle of the highway. It is for you to determine from all the evidence in the case whether or not the defendant did run his automobile to the left of the middle of the highway, and if so whether or not it was negligence for him to do so, under all the surrounding circumstances in the case, taking into consideration the locality and all surrounding circumstances.

"(11) I instruct you that, even though you should find from the evidence that the defendant, at the time and place

of the accident in question, was not driving on the right-hand side of 39th avenue north that fact would not, in itself, constitute negligence. A person is not always required to drive upon the right-hand side of the street or highway. The law in this state does not require the driver of an automobile to drive upon the right-hand side of the street at all times, but requires the driver or operator of an automobile to turn to the right in meeting vehicles, teams, or persons moving or headed in an opposite direction. A person may rightfully use what is to him the left-hand side of the road, if there is no driver at that time on that side of the road, and if the circumstances are of such a character as not to make his conduct a source of danger reasonably to be apprehended."

The court also instructed:

"I instruct you that neither the deceased Fred Hiscock nor the automobile of the defendant at the time and place of the accident complained of in this case had a superior right to the use of the streets, but that their rights were equal."

The appellant assigns error upon the giving of these instructions. The instructions seem to have been based upon the statute rather than the city ordinance, and do not correctly state the law in the light of the ordinance. Under the first section of the ordinance, it was the duty of the respondent to keep "as near the right-hand curb as possible." This he did not do. Nor is it the law, in the light of the ordinance, that neither "had a superior right to the use of the streets, but that their rights were equal" at the "place" of the accident. Under the ordinance, the boy had a superior right to the use of the right-hand side of the street. *Ballard v. Collins*, 63 Wash. 493, 115 Pac. 1050; *Reynolds v. Pacific Car Co.*, 75 Wash. 1, 134 Pac. 512. In *Ballard v. Collins*, in speaking of an ordinance of the city of Seattle, we said:

"While the respondent's chauffeur was required to exercise reasonable care, he was not required to anticipate that a car was approaching on his side of the street. He had a right to presume that the law of the road would be observed."

So in the case at bar, the boy had a right to assume that he would not meet a traveler upon his side of the street; and so long as he was upon his side of the street, he was traveling with a faith justified by law that he would encounter no object traveling in his direction. A traveler who is observing the ordinance has a superior right to the use of the street over one who is traveling in disregard of the ordinance.

A reference to the record shows that these instructions were prejudicial. After the jury had been instructed and had retired to deliberate, they returned to the court room for further instruction. Whereupon the court said: "I understand you want some further instructions?" to which one of the jurors replied, "Yes, sir. The jury seems to be in doubt as to part of the instructions as to whether the defendant had the right to the center of the road or street." Whereupon the court re-read instruction No. 11, and then said to the jury, "Does that cover the point?" to which the juror replied, "I think so, sir."

The question at issue is, what was the proximate cause of the death of the boy? The jury should have been instructed that, if they found that the respondent was not driving "as near the right-hand curb as possible," in view of the width and course of the avenue and other surrounding conditions at the time of the accident, he was guilty of negligence.

The respondent relies upon *Segerstrom v. Lawrence*, 64 Wash. 245, 116 Pac. 876. It does not sustain his position. The instructions were evidently drawn in harmony with that case. There we were speaking of the statute and the law of the road arising from usage and custom. There was no ordinance involved.

Nor does the ordinance conflict with the statute, Rem. & Bal. Code, § 5558 *et seq.* (P. C. 33 § 13). It covers conditions which the statute does not reach. There being no conflict, the ordinance establishes the law of the road within

the boundaries of the city. *In re Ferguson*, 80 Wash. 102, 141 Pac. 322.

The appellant requested the court to instruct the jury that, if they believed from the evidence that the defendant was driving his automobile on the left-hand side of the street at the time the accident occurred, his negligence was presumed. This instruction should have been given.

The appellant also complains because of the failure of the court to instruct upon certain phases of the evidence in respect to negligent acts of the respondent, which are not charged in the complaint, and upon which she made no request for instructions. Counsel insists that this was error, relying upon § 16, art. 4, of the constitution, which provides that judges "shall declare the law." This we have construed to mean that the court shall declare the law applicable to the case in a general way. If a party desires to have the instructions adapted to a particular view of the case or to meet a situation which he conceives ought to be covered, it is his duty to specially request them, and in the absence of such a request, a mere omission upon the part of the court to instruct is not error. *Zolawenski v. Aberdeen*, 72 Wash. 95, 129 Pac. 1090.

The appellant further contends that the verdict of the jury cannot be harmonized with the physical facts. Other facts relied upon in addition to the skid marks are that pieces of a wooden box and its contents, which the boy was carrying upon his bicycle, were found along the west curb of the avenue some ten or fifteen feet south of the point where the avenue and the street intersect. From what has been said, it will appear that it was a disputed question of fact whether the skid marks were made by the respondent's automobile. There are no admitted physical facts which could control or overthrow the verdict of a jury. The point of actual contact, as well as the question whether the respondent's car made the skid marks to which the witnesses

testify, was a question for the jury. *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941.

A witness for the respondent, Arthur Bond, testified that the respondent's car passed him in the block where the collision occurred; that the car appeared to be in the center of the street; that he observed the speed of the machine; that he has seen many automobiles in motion, and that in his opinion the car was not going more than nine miles an hour. On cross-examination, he testified that he had never owned or operated an automobile, and that he had never made tests of speed or distance traveled by an automobile in a given space of time. It is contended that the court erred in refusing to strike the testimony of the witness as to the rate of speed, upon the appellant's motion. It is argued that the testimony was inadmissible "unless the witness was thoroughly qualified as an expert and his observation was such as to justify him in forming an opinion." No authorities are cited in support of the contention. We think the testimony·was competent. Its weight, of course, was for the jury.

Other alleged errors, such as that the court commented upon the facts, do not merit consideration.

The judgment is reversed, with directions to grant a new trial.

CROW, C. J., ELLIS, and MAIN, JJ., concur.