[No. 20617. Department Two. October 25, 1927.]

E. J. COLLINS, *Respondent*, v. ISADORE BARMON *et al.*, *Appellants.*[1]

[1] HIGHWAYS (52, 58)—USE OF ROAD—NEGLIGENCE IN COLLISION— EVIDENCE—QUESTION FOR JURY. The negligence of the defendant in colliding with plaintiff's car is for the jury, where the evidence was conflicting and plaintiff's evidence indicated that plaintiff approached on the inside of a sharp curve at high speed, striking plaintiff's car when it was brought to a stop partly off the pavement on its side of the highway.

[2] SAME (56-1)—USE OF ROAD—NEGLIGENCE IN COLLISION—EVIDENCE —ADMISSIBILITY. In an action for injuries sustained in an automobile collision, evidence of skid marks indicating the point and manner in which the cars came together, by a witness who saw them an hour and a half after the accident, is admissible, its weight being for the jury, where the marks would probably have been in existence that long.

[3] JURY (42, 45)—COMPETENCY OF JURORS—ACQUAINTANCE WITH ATTORNEY—BIAS. It is not error to deny a challenge to a competent and intelligent juror, on account of his acquaintance with one of the attorneys, who "preferred" not to sit on the case, and admitted that his acquaintance might "unconsciously" influence his verdict, denying any conscious prejudice and being qualified in every other respect.

[1] Reported in 260 Pac. 245.

[4] NEW TRIAL (49)—MISCONDUCT OF JURORS—AFFIDAVITS OF JURORS
—IMPEACHMENT OF VERDICT. The verdict of a juror cannot be
impeached by an affidavit to the effect that a challenged juror
was made foreman and wanted to give respondent a larger
verdict than the one unanimously agreed upon.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered March 13, 1926, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action for damages sustained in an automobile
collision. Affirmed.

*Rummens & Griffin,* for appellants.

*Schwellenbach, Merrick & Macfarlane,* for respondent.

HOLCOMB, J.—Appellant, the husband—who will
hereafter be spoken of in this case as if the only appellant—while driving in his Buick automobile northerly
on the Pacific highway between the towns of Silvana
and Marysville, on November 4, 1924, at about 2:00
o'clock p. m., came into collision with the car of respondent, and much damage was done. The cars collided at or near a curve known as "Dead Man's
Curve," which makes an almost complete right angle
turn.

Appellant was driving on the right hand side of the
highway, as he and his witnesses say, and on the curve
would have the inside or short arc across the curve.
Respondent was driving southerly and would have the
outside of the curve; but appellant and his witnesses
declare that respondent was driving on their side of
the pavement, except just at the time of the collision,
when he attempted to turn to the right. Appellant's
version of the manner in which the collision occurred
was supported by the testimony of two witnesses who
were in his car with him, and we must confess would
seem the most reasonable and probable, inasmuch as

drivers generally attempt to drive across the short side of curves. In this case, it was the proper side for appellant.

Be that as it may, the evidence is in sharp conflict, and that of respondent, together with that of a witness who testified to having arrived at the scene of the accident an hour and a half later, and found skid marks on the pavement showing that the car of respondent had been shoved over for about eighteen inches on the pavement, then across on the gravel at the side of the pavement for a short distance, until the car was shoved up nearly to or against three telephone poles standing in a group at the curve. The car of appellant, after having been struck, slid on the slippery pavement, turned around and came to rest a short distance behind the car of respondent, facing in the same direction, that is, in the opposite direction to that in which it had been traveling.

Simultaneous suits were begun by each of the parties; but when this action was begun by respondent for $1,573.50 as damage to his automobile, appellent cross-complained for $1,086.72 for damages to his car, and $1,000 because of personal injuries. The repair bill proven by respondent for his car was the sum of $663.35, and that was the amount of the jury's verdict in his favor. There are other details in the evidence as to the actions of the parties at, immediately before, and immediately after the collision, all of which are in conflict, and all of which were resolved by the jury in favor of respondent. The entire record has been read.

[1] Appellant insists that the trial court should have granted his motion for nonsuit at the close of respondent's evidence; because, it is contended, respondent testified that he could see the car of appel-

lant for three hundred yards, saw that he could not make the curve, knew they would crash if he attempted to go around, and yet he drew to the right side of the road in the very path of the oncoming car, swinging around the curve, taking his hands off the steering wheel, burying his head in his hands and making no effort to get out of the way; that, under this testimony, respondent stopped in the only spot where he could have been hit.

On the trial, the evidence of respondent was to the effect that, when he saw the car of appellant coming so rapidly toward him, and knew that it could not miss hitting him if it attempted to take the curve at the speed at which it was going, he drew to his own side of the road, leaving his car with the left-hand wheels about two feet on the paved way and the rest of his car off the paved way, *stopped his car* and then threw his hands up over his face to prevent being struck by broken glass.

The jury had the right to believe his testimony that that was the way in which the accident happened, and it was wholly within their province so to do. The motion for nonsuit was properly refused, and for the same reason the motion for judgment n. o. v., was properly denied. *Donaldson v. Great Northern R. Co.,* 89 Wash. 161, 154 Pac. 133; *Jensen v. Lawrence,* 94 Wash. 148, 162 Pac. 40, Ann. Cas. 1917E 133; *Chapman v. Rose,* 135 Wash. 248, 237 Pac. 708.

[2] It is contended also that the court erred in permitting a witness to testify as to the purported skid marks upon the road when he did not arrive there until about an hour and thirty minutes later, on a rainy day, when the pavement was wet and slippery, on a road that was proven to be a main arterial highway, admittedly known by everybody to be used by vehicles of every description going in both directions.

The evidence of the witness as to the marks of the wheels of respondent's car being shoved from the place where it was standing on the pavement to the place where it came to rest after the accident, even though the witness did not see them for an hour and a half thereafter, was in all events, probable. That kind of evidence would probably still be in existence from the time of the accident until the time of the arrival of the witness. The other evidence as to the skid marks of the other car, while apparently somewhat improbable, nevertheless was not incompetent, but its weight and credibility were for the jury. This court accepted the evidence which had been admitted by the trial court as to skid marks testified to by a witness who arrived forty minutes after the accident. *Hiscock v. Phinney,* 81 Wash. 117, 142 Pac. 461, Ann. Cas. 1916E 1044. We there said:

"The point of actual contact, as well as the question whether the respondent's car made the skid marks to which the witnesses testify, was a question for the jury."

Appellant also complains of the exclusion of testimony by the trial court upon cross-examination of respondent by counsel for appellant, which we have examined and find no merit in the contention of appellant.

[3] Appellant vigorously complains of the acceptance of a juror named McClure, challenged for cause by appellant, and the challenge denied. Appellant exercised his three peremptory challenges against other jurors, and did not exercise it against McClure. McClure, on *voir dire,* testified that he was acquainted with Mr. Schwellenbach, one of counsel for respondent, and that they had met sometimes in connection with American Legion work, and also in a social way. He testified that he did not think the acquaintance would

influence him in any wise in any judgment he might reach on the facts in the case. On being asked by counsel for appellant whether he felt that, consciously or unconsciously, his acquaintance with Mr. Schwellenbach might influence his verdict respecting questions of fact, the juryman answered that it would not consciously, but might unconsciously; that he had never heard of the case before; that Schwellenbach had never represented him in any professional manner; and that his acquaintance with Schwellenbach would not permit him to be overcome by his eloquence in the argument to the jury, although he admitted a little further on that he could see a possibility of being unconsciously influenced; that he preferred not to serve on the case.

Upon the challenge, although it was not resisted by Mr. Schwellenbach, the court denied it because he said it was immaterial what jurors did or did not prefer; that it was a juror's duty to try a case whether he liked or disliked it; and that the court was not concerned with *unconscious* things. The *voir dire* examinations of this juror and all other jurors have been read, and we are satisfied that the juror desired to be fair and impartial. His position was that of assistant superintendent of schools in Seattle. He was undoubtedly a man of fine mental and moral qualities, and he seemed a very honest and candid man. While he was ready to admit that he might be unconsciously biased in favor of Schwellenbach's cause, such mental attitude on the part of such a juror would probably cause him to endeavor the harder not to permit any bias or prejudice in favor of that side.

[4] Upon the motion for a new trial, an affidavit was filed by one of the jurors who served on the case, to the effect that McClure was elected foreman of the jury, and that he urged that a verdict be given plaintiff in the amount sued for, or fifteen hundred dollars.

The affidavit of the juror is so clearly controlled by our rule that jurors will not be permitted to impeach their own verdicts that it is not necessary to cite authorities.

The verdict of the jury was unanimous. While at first blush, a majority of the judges were inclined to think that appellant had been denied a fair trial by the denial of his challenge of juror McClure, after carefully studying the record, we are unable now to so decide.

We believe that appellant had a fair trial, and that the verdict must be, and is, affirmed.

MACKINTOSH, C. J., FULLERTON, MAIN, and ASKREN, JJ., concur.