[No. 25770. *En Banc.* August 20, 1936.]

WALLACE SAULNESS, *a Minor, by Ethel Saulness, his Guardian, Appellant,* v. NORMAN REYNOLDS *et al., Respondents.*[1]

*Frank L. Walters,* for appellant.

*Tom W. Holman* and *Harold A. Pebbles,* for respondents.

GERAGHTY, J.—On July 13, 1934, at about 10:30 a. m., a bicycle ridden by Wallace Saulness, a boy fourteen years of age, collided with a Studebaker sedan operated by Norman Reynolds. This action was brought by the boy, through his guardian, to recover for serious personal injuries alleged to have been sustained by him as a result of that collision. The cause was tried to the court, which found that Saulness was guilty of contributory negligence, by reason of which he was not entitled to a recovery. A judgment of dismissal was entered, and the plaintiff appeals.

[1]Reported in 60 P. (2d) 93.

The essential facts as found by the trial court are fully sustained by the evidence; they may be summarized as follows:

The accident occurred a short distance south of the intersection of Nagel place and east Howell street, non-arterial streets, in the city of Seattle. The course of Nagel place is northerly and southerly. This street is level for a distance of two blocks or more south of its intersection with east Howell street. East Howell street extends east and west, terminating in a "T" at Nagel place. It declines from Broadway, one block on the west, to the intersection at a grade of 9.3%.

Inside the south curb of east Howell street is a parking strip ten and one-half feet wide. South of that parking strip is a sidewalk six feet wide. Inside the west curb of Nagel place is a parking strip about two feet wide. West of this parking strip is a sidewalk about six feet in width. East Howell street is twenty-six feet between curbs, and Nagel place is twenty-two feet.

At the southwest corner of the intersection of these two streets, and immediately back of the sidewalks, is a sloping embankment eight feet high at the corner and covered with tall grass. This embankment obscured the views of appellant Saulness and respondent Reynolds so that, approaching the intersection, they would not have, during the last fifty feet of their approach,

". . . a clear and uninterrupted view of the streets entering said intersection for a distance of 200 feet from such intersection. Said July 13 was a clear, sunshiny day and said streets and intersection were dry."

A Ford coach owned by respondent Ammann was parked in Nagel place close to the curb,

". . . on the cross walk made by an extension of the sidewalk lines of the sidewalk on the south side of east Howell street extending east across Nagel place; and said Ford coach was parked so that the rear bumper was 13½ feet from the south curb line of east Howell street."

Appellant Saulness was riding on his bicycle east on east Howell street at a speed of approximately eight miles an hour. He was traveling about two feet on his right of the center line of east Howell street. When he arrived at a point about fifty feet west of the intersection, and from which point he could get a very restricted view of Nagel place south of the intersection, he looked past the embankment on the southwest corner of the intersection and between the parked Ford coach on the west side of Nagel place and another car parked three feet south of the Ford coach, and saw no cars approaching from the south. Appellant did not again make any effort to look for traffic up to the point of the collision. At the point where he looked, appellant's vision was restricted, as above stated, by the high embankment.

As appellant approached the intersection, he applied the coaster brake of his bicycle, reducing his speed to from three to four miles an hour, and turned to go south on Nagle place, passing close to the left rear fender of the parked Ford coach, continuing southeasterly in Nagel place to the point of collision with the Studebaker sedan operated by respondent Reynolds. As appellant turned the corner on Nagel place, the parked Ford coach would have seriously interfered with his view.

Respondent Reynolds was proceeding north in a Studebaker sedan on Nagel place. The left wheels of his automobile were slightly west of the center line of Nagel place. At the time of the collision, the Stude-

baker was traveling at a speed of twenty-five to thirty miles an hour,

". . . which speed carried the Studebaker in a skid with the bicycle lodged under the left front wheel of the automobile from the point of collision a distance of thirty feet."

Reynolds did not sound the horn of his automobile at any time while approaching the intersection. As appellant, riding his bicycle, rounded the corner, he was traveling in a southeasterly course upon his right side of Nagel place. The point of impact of the bicycle with the Studebaker sedan was approximately east of the left rear wheel of the parked Ford coach (the rear bumper was thirteen and one-half feet south of the south curb line of east Howell street) and slightly west of the center line of Nagel place.

Respondent Reynolds had traveled this course frequently before. He was familiar with the fact that Nagel place was a narrow street and that the embankment on the southwest corner of the intersection obscured his view of traffic coming from the west on east Howell street. Prior to the collision, and for a distance of one hundred ten feet, he had driven his car in practically a straight line and slightly west of the center line of the street. Appellant had been in the habit, for a number of months, of pursuing the same general course on his way to a nearby playground.

The court further found:

". . . that the accident would not have occurred except for the combining and concurring negligence of the driver of the Studebaker car, the parked Ford, and the plaintiff. That the plaintiff was guilty of contributory negligence as a matter of fact."

We are in agreement with the finding of the trial court that the driver of the Studebaker car and

the owner of the Ford car, parked in violation of the provisions of a city ordinance, were guilty of negligence, but we are not in agreement with the court's view that the appellant was guilty of contributory negligence.

An ordinance of the city of Seattle provides that drivers shall proceed upon the right half of the street and as closely as practicable to the right-hand edge or curb of the roadway, except upon one-way streets, etc. In negotiating the intersection, the appellant was at. all times upon his own side of the street, where, under the traffic ordinance, he had a superior right to be. Respondent Reynolds was driving his car in violation of the traffic ordinance and in disregard of the rights of others. To deny appellant a remedy, under the circumstances, would be equivalent to holding that one riding a bicycle upon the streets assumes all the risks of accident.

In the early days of the bicycle, some courts were of the view, perhaps not without a show of reason, that the use of a bicycle upon the streets was in itself the assumption of a hazard amounting to contributory negligence; but this view was never generally accepted and has long since been abandoned.

The principle controlling here was announced in *Hiscock v. Phinney,* 81 Wash. 117, 142 Pac. 461, Ann. Cas. 1916E, 1044, where suit was brought for the death of a boy resulting from the collision of a bicycle, upon which he was riding, with an automobile. The trial court had instructed the jury that neither the deceased nor the automobile, at the time and place of the accident, had a superior right to the use of the streets, but that their rights were equal. Commenting upon this instruction, the court said:

"Under the first section of the ordinance, it was the duty of the respondent to keep 'as near the right-

hand curb as possible.' This he did not do. Nor is it the law, in the light of the ordinance, that neither 'had a superior right to the use of the streets, but their rights were equal' at the 'place' of the accident. Under the ordinance, the boy had a superior right to the use of the right-hand side of the street. *Ballard v. Collins,* 63 Wash. 493, 115 Pac. 1050; *Reynolds v. Pacific Car Co.,* 75 Wash. 1, 134 Pac. 512. In *Ballard v. Collins,* in speaking of an ordinance of the city of Seattle, we said:

" 'While the respondent's chauffeur was required to exercise reasonable care, he was not required to anticipate that a car was approaching on his side of the street. He had a right to presume that the law of the road would be observed.'

"So in the case at bar, the boy had a right to assume that he would not meet a traveler upon his side of the street; and so long as he was upon his side of the street, he was traveling with a faith justified by law that he would encounter no object traveling in his direction. A traveler who is observing the ordinance has a superior right to the use of the street over one who is traveling in disregard of the ordinance."

The judgment will be reversed, and the cause remanded for further proceedings.

BLAKE, HOLCOMB, MITCHELL, and TOLMAN, JJ., concur.

MILLARD, C. J. (dissenting)—The majority opinion establishes the law of this state to be that if a minor desires to do so he may, if riding a bicycle, refrain from looking and assume that he will not meet a traveler upon his side of the street; that, so long as the minor is upon his side of the street, he may travel "with a faith justified by law" that he will not encounter any object coming toward him; that he is not required to see that which he could see if he looked. Such a rule is not sound in law, nor is there a reasonable basis therefor.

Appellant did not look for traffic upon Nagel place at any time prior to the collision except for a fleeting glance when he was on east Howell street at a point approximately fifty feet west of the west line of the intersection. At that point, it was impossible, because his view was obstructed by the bank on the southwest corner, by the Ford coach of Ammann and by another automobile parked three or four feet south of Ammann's automobile, for appellant to gain a knowledge, by a brief glance, of traffic conditions on Nagel place. Appellant admitted that, from that point until the collision occurred, he did not look. It fairly appears that the bicycle, as the trial court stated,

". . . shot out from behind the car at a definite angle towards the approaching Studebaker . . . that he went around this car with all of this obstruction in his course without looking out for approaching traffic and without knowing whether traffic was approaching or not,—because he didn't have an opportunity to know."

The impairment of appellant's view imposed upon him the duty of so operating his bicycle, or even stopping it, until he could ascertain what the traffic conditions were on Nagel place before entering thereon.

It is patent from an examination of the evidence that the trial court correctly concluded that, by virtue of appellant's contributory negligence, appellant was not entitled to a recovery and that the action should be dismissed.

As no good purpose would be served by further expressions of disagreement with the majority opinion, I refrain from discussion of another reason urged by respondents as a bar to recovery.

The judgment should be affirmed.

MAIN, BEALS, and STEINERT, JJ., concur with MILLARD, C. J.