[No. 32397. Department One. October 16, 1953.]

THE STATE OF WASHINGTON, *Respondent*, v. ROLAND W. PARIS, *Appellant*.[1]

[1] Reported in 261 P. (2d) 974.

*Joseph J. Stangle*, for appellant.

*Hugh H. Evans* and *Willard J. Sharpe*, for respondent.

MALLERY, J.—The defendant appeals from a conviction of negligent homicide arising out of the drunken and reckless driving of an automobile.

At about 1:20 a. m., on the morning of October 25, 1952, an Oldsmobile sedan was being driven westerly on Garland avenue in Spokane. Midway between Ash and Oak streets, which intersect Garland avenue, it struck a barricade and lighted sewer excavation and then careened onto its wrong side of Garland avenue, where it crashed into a Chevrolet car driven by Harold Odeen, who was accompanied by his wife and mother-in-law.

Appellant contends the state's circumstantial evidence failed to prove he was in the car at the time of the collision, and that it is a reasonable hypothesis that he was a pedestrian.

Michael F. Ryan testified, among other things, as follows:

"Q. As you were walking west what occurred? . . . A. Well, there was an Oldsmobile came down the street. I just happened to glance up at it and as it went by there I just looked on down toward the way I was going and the next thing I knew there had been an accident down at the end of the street and I had *ran* on down to take a look at the accident. . . . Q. Based on your observation of that car, did you form an opinion as to how fast it was going? A. Yes, I did. Q. How fast would you say it was going? A. It was between 40 and 45. Q. After it passed you at Ash and Garland did this car strike the excavation? A. Yes. . . . Q. What course did the automobile take after it had gone

over the excavation? A. It went directly west in a sort of a slide and sort of a half slide. Q. And then what occurred? A. Then he hit this 1949 Chevy that was going north; no, it was going east on Garland. . . . Q. What did you do *immediately* after the collision? A. I went around to look in the car, in the Chevrolet, and there was an elderly woman in there. Q. And how was she seated in the car, Mr. Ryan? A. She was slumped over, oh, about halfway down in the seat. Q. Did she appear to be conscious or unconscious? A. Unconscious, I believe, at the time. Q. Did you notice any sign of life when you observed her? A. I thought she was alive. She had a sort of gurgling sound in her throat. Q. Did you see any other people there at the scene? A. Yes, there were two others. Q. These two others you speak of, were they in either car when you arrived? A. No, sir. Q. Where were they? A. They were outside of the car. Q. Did you see any other injured person at the scene? A. Yes, there was another man. He was laying under the Oldsmobile. Q. Do you see that man anywhere in the courtroom? A. Yes, he is sitting at the opposite end of your table there. Q. Describe, if you will, how he was laying with reference to the Oldsmobile car. A. He was on the righthand side of the car *with his feet in the front part of the car and his head and part of his chest about underneath the back door of the Oldsmobile, which was open.* Q. Was he conscious or unconscious when you first saw him? A. Unconscious. . . . Q. Did you later see this man who had been lying next to the car? A. Yes, I did. Q. Did he at any time regain consciousness? A. Yes. Q. Did you have occasion to hear him talk? A. I did. Q. What, generally, did you hear him saying and fully testify to that to the jury? A. He said something about 'my baby; where is my baby?' It didn't make too much sense because I couldn't see any baby or any woman to speak of around there." (Italics ours.)

The testimony of Mr. and Mrs. Odeen makes it clear that the parties about whom Ryan testified were Mrs. Odeen's mother, who died as a result of the accident; Mr. and Mrs. Odeen, who had gotten out of their Chevrolet; and the appellant, who was lying unconscious with his feet in the front part of the Oldsmobile.

Appellant's position with his feet in the front part of the otherwise empty Oldsmobile, entitled the jury to believe that he had been in the car prior to the collision and was not a pedestrian.

We have heretofore quoted Ryan's testimony of appellant's inquiries about his "baby." Elsewhere in the record, other witnesses testified with regard to appellant's babbling about his "baby," meaning his wife. Some of the witnesses searched the immediate vicinity because of these statements and found no one.

It is appellant's contention that his semiconscious statements about "baby" indicate that his wife was with him at the time of the collision, and that the state has not negatived that possibility.

Mr. Odeen testified, among other things, that:

"Q. Did you observe any one in the other car after the accident? A. There was no one in the car. Mr. Paris was laying outside of the car."

The hypothesis for which he contends is based solely upon his babbling about "baby." The testimony of Ryan and Odeen indicates clearly that no one else was in the car, and the search revealed no one in the vicinity immediately after the collision.

The circumstance of appellant being alone in the car need not be proved beyond a reasonable doubt, as it is only the ultimate fact of guilt that requires that degree of proof.

The rule is stated in 20 Am. Jur. 1112, Evidence, § 1258:

"The reasonable doubt the jury is permitted to entertain must be as to the whole evidence, and not as to a particular fact in the case. Thus, each circumstance tending to prove guilt in a criminal case need not be established beyond a reasonable doubt before taking the part of it so established into account in making up the verdict. It has been said that it is not essential that every piece of evidence be admissible beyond a reasonable doubt. Nor is it requisite that the jury believe a particular witness beyond all reasonable doubt; it is the guilt of the defendant that must be so proved."

See, also, 9 Wigmore on Evidence 324, § 2497.

From the entire situation, the jury had a right to believe that the appellant's wife was not with him and that he was alone in the car. Such a permissible finding of fact by the jury disposes of appellant's contention that the case

comes under the rule of *State v. Williams*, 141 Wash. 165, 251 Pac. 126, in which

". . . two men were riding in the truck, and as it stopped, one of the men got out of it and escaped, and was not recognized by the officer. The officer reached the truck as the appellant was getting out, and assisted him in so doing, and immediately placed him under arrest."

We there held that the circumstantial evidence relied upon was insufficient to identify which man was the driver and which was not. To make a *prima facie* case of guilt, it is, of course, not enough to show that a defendant is one of two or more persons who could have committed the crime.

In the instant case, no contention is made that the car was not driven recklessly or that appellant was not drunk. When the jury found the circumstances to be that appellant was in the car at the time of the collision, and that his wife was not with him, a *prima facie* case was established which meets the test for the sufficiency of circumstantial evidence, which is that the proved circumstances be consistent with each other and with the guilt of appellant, and inconsistent with any reasonable hypothesis of innocence.

██ Mrs. Odeen, in the course of her testimony, was asked the question:

"Q. What did you see when you looked over at the other car, Mrs. Odeen? A. I saw the *driver* of the other car lying out of the driver's side, with his body out of the car and his foot in the car. Q. Do you see that man here in the courtroom? A. Yes. Q. Where is he? A. There (indicating) [defendant]." (Italics ours.)

On cross-examination, she corrected her statement, and made it clear that she meant the right-hand side of the car. However, her designation of appellant as the "driver" was not challenged nor made the subject of cross-examination. This testimony falls under the rule of 20 Am. Jur. 1036, Evidence, § 1185:

"The fact that evidence which is introduced in a case may be, if objected to, incompetent evidence under some one or more exclusionary rules of evidence does not destroy its probative effect, if it is admitted without objection. It is the generally prevailing rule that relevant evidence re-

ceived without objection may properly be considered, although it would have been excluded if objection had been made. Such evidence, where admitted without objection, has the force and effect of proper evidence and is to be accorded its natural probative effect as though it were admissible under the established rules of practice."

The state made out a *prima facie* case of guilt, and, accordingly, the judgment is affirmed.

GRADY, C. J., HILL, WEAVER, and OLSON, JJ., concur.

---

November 23, 1953. Petition for rehearing denied.

'Reported in 261 P. (2d) 968.