[No. 33029.   Department One.   August 11, 1955.]

THE STATE OF WASHINGTON, *Respondent,* v. FRED MCMURRAY, *Appellant.*[1]

[1] Reported in 286 P. (2d) 684.

*Geo. W. Young,* for appellant.

*Hugh H. Evans* and *James P. Connelly,* for respondent.

SCHWELLENBACH, J.—Fred McMurray was charged by Count I of an information with the crime of negligent homicide, in that he, being the operator of a motor vehicle on a public highway in Deer Park, did operate such vehicle while under the influence of and affected by the use of intoxicating liquor, and in a reckless manner and with disregard for the safety of others, to-wit: by driving at a speed of thirty-five miles an hour where the legal speed limit was twenty-five miles an hour; by operating such a vehicle without adequate lighting from the headlights, it being during the hours of darkness; and by failing to drive to the right of the center of the highway. Count I alleged that, because thereof, he caused such motor vehicle to collide with and run into and against one Jay Stone, resulting in mortal injuries.

Count II charged the defendant with the crime of operating a motor vehicle while under the influence of, or affected by, the use of intoxicating liquor. Count III charged him with the crime of reckless driving. The jury returned a verdict of guilty as to all three counts. This appeal follows.

McMurray testified that, about three o'clock in the afternoon of March 13, 1954, two men came to his house to ask his assistance in doing some welding; that he opened three bottles of beer, which they drank, but that he only took a swallow; that the men went to town during the afternoon and brought back more beer, which they consumed, but that he only took a swallow from each, his reason being that drinking beer after welding zinc and brass would make him sick to his stomach; that he had a bottle of gin in the house and poured a drink for each man, but that he did not take any; that at about seven o'clock in the evening he left the men at the house and went to town; that he stopped at The Hut Tavern and drank part of a bottle of beer, after which he went to the J. & J. Tavern, where he stayed a short time; that he then went to the liquor store and bought a fifth of gin and a fifth of wine; that he returned to the J. & J., placed the package containing the gin and wine on the bar and went to the lavatory; that upon his return he discovered that someone, for a joke, had opened the gin bottle and poured out a glassful—that he did not touch it; that someone bought him a stubby of beer, of which he drank part and had the bartender pour out the rest; that later other people bought him four bottles of beer, which he had the bartender recap, and that he put the bottles in a sack and placed them in his car.

He testified further that he left the J. & J. Tavern the last time about nine o'clock and started home; that he was driving between twenty-five and thirty miles an hour on his own side of the road; that he did not know whether his lights were on high or low beam; that the lights would cast about one hundred feet on low beam and between two hundred and two hundred fifty feet on high; that, just before a driver reaches the point where the accident happened, there is a blind spot under the street light where, for a fraction of a second, nothing can be seen; that suddenly he saw a dark object and felt a thud; that he applied his brakes, stopping his car within two car lengths, started to get out and saw a man lying there; that he then drove to the side of the road, parked, and ran for help.

Two elderly men were hit in the collision. They were Jay and Ray Stone, brothers. Jay was instantly killed and Ray was seriously injured.

■ McMurray was corroborated on the drinking issue by several friends and a couple of bartenders. On the other hand, witnesses for the state testified that there was a strong odor of liquor on his breath. That night he was taken to the state patrol office, where he was questioned for about an hour and a half. At one time he was asked to step out into the hall. When an officer sought him for further questioning about ten minutes later, he was asleep on the settee. He denied being asleep, claiming that the lights bothered him and that he closed his eyes to avoid the glare. At the patrol office, he was asked when he first saw the men, and he replied, "I never saw them until they was coming through the windshield."

A specimen of his urine was taken at the scene of the accident. The container was sealed and labeled, placed in a refrigerator, and later tested by chemists. The test showed a 0.275 per cent alcohol content. Expert testimony presented by the state, which was disputed by defendant's expert, related how alcohol acts in the blood stream and how it numbs the brain, affecting a person's judgment; that the amount of alcohol in the urine and the amount in the blood are directly related to the amount of alcohol that has been consumed; and that an alcoholic content of 0.275 in the urine would be equal to about five ounces of one hundred per cent alcohol in the body. At any rate, intoxication was a jury question, and its verdict demonstrated that the jury either believed the state's witnesses as to this issue and disbelieved defendant's witnesses, or concluded that the few swallows of beer which defendant claimed to have taken, must have been quite potent.

■ McMurray testified that he had looked at his speedometer, and he was traveling twenty-five miles per hour. An officer testified that McMurray told him he was going thirty-five miles per hour. Defendant does not remember making this statement. The deceased's body was hurled into the windshield, shattering it. Jay Stone was killed in-

stantly. An autopsy showed the cause of death to be a broken back and ruptured great vessels with hemorrhage. A shoe was knocked from Ray Stone's foot. The question of speed was also a jury question, and the jury had a right to consider not only the oral testimony, but the physical facts, in deciding this issue.

In this state, the test for the sufficiency of circumstantial evidence is that the proved circumstances be consistent with each other and inconsistent with any reasonable hypothesis of innocence. It is not necessary that each circumstance be proved beyond a reasonable doubt, as it is only the ultimate fact of guilt that requires that proof. *State v. Paris*, 43 Wn. (2d) 498, 261 P. (2d) 974. The question whether circumstantial evidence tending to connect the accused with the crime charged excludes to a moral certainty every other reasonable hypothesis than that of guilt, is a question for the court only when it can be said as a matter of law that the evidence adduced by the state will not support a verdict of guilty. *State v. Gillingham*, 33 Wn. (2d) 847, 207 P. (2d) 737.

McMurray admitted that it was his car which struck the deceased. After the accident, the officers promptly blocked off the area. An investigation revealed that the only physical evidence pointing to the actual point of impact was found on McMurray's wrong side of the road. This evidence consisted of two stretches of dry earth extending about two feet in length and separated to such an extent that they could have been dropped from the inside of the fenders as a result of the impact; skid marks leading from the left to the right side of the road in the direction of McMurray's parked car; and the fact that the deceased and his brother were found on the wrong side of the road, as were articles of their clothing.

To counteract this, appellant contended that the skid marks might have been made by other cars, and he testified that snow was melting that day and that there were chuck holes in the Deer Park roads with water in them. This testimony was apparently offered to show that water must have splashed underneath the fenders, thus dampening any

dry earth which might have accumulated there. The state's witnesses, on the other hand, testified that the day was cold and the roads frozen and dry.

■ Evidence of skid marks indicating the point and manner of a collision is admissible, its weight being for the jury. *Collins v. Barmon,* 145 Wash. 383, 260 Pac. 245.

■ In the absence of admitted physical facts which could control or overthrow the verdict of the jury, the point of actual contact is a question for the jury. *Hiscock v. Phinney,* 81 Wash. 117, 142 Pac. 461.

■ The state offered and proved circumstances consistent with each other and inconsistent with the hypothesis of innocence in connection with the question of driving on the wrong side of the road. There is no physical evidence that the collision occurred on appellant's side of the road, and the only evidence as to that contention is the testimony of appellant himself. Under the circumstances, it cannot be said that there was a reasonable hypothesis of innocence sufficient to warrant taking the case from the consideration of the jury.

■ Appellant contends that the trial court erred in denying his motion for directed verdict, and also in denying his motion for arrest of judgment. As we have heretofore pointed out, there was sufficient evidence to submit the question of guilt or innocence to the jury.

The night of the accident, after the investigation had been made at the scene of the accident and after appellant had been taken to the patrol office, appellant's car was placed in the storage garage of one James Swinyard, a resident of Deer Park. Later, the headlight lenses were removed and sent to the prosecutor's office, and then returned and replaced. Six days after the accident, an experiment was made to test the distance at which people could be seen with the headlights on high and low beams. Atmospheric conditions and the condition of the moon and stars were similar to such conditions on the night of the accident. The men conducting the experiment did not have a key to the car, so it was not taken out to the location where the accident occurred. It was pushed from the storage garage out onto a driveway and pointed out toward an open, flat area.

The terrain was about the same. There was no rise in elevation within the distance within which the men could be seen. The test was not made under driving conditions on the road. It was admitted by the state's witnesses that the candle power of lights tends to diminish after the car remains idle. It was also shown that McMurray's car was equipped with a "hiked up" generator.

One man sat in the car behind the steering wheel in a position where he could see through a portion of the windshield which had not been shattered. Two men walked away from the car in the path of the illumination from the headlights. One of the men walking away was dressed in light-colored suntan clothing, and the other was dressed in dark olive drab. As soon as either of the two men disappeared from view, the man in the car shouted, and the man disappearing stopped, and the distance back to the car was then measured. Both men disappeared from view at a distance of thirty feet when the headlights were on low beam. When they were on high beam, the man in dark clothing disappeared at sixty-seven feet, and the man in light clothing at one hundred fifty feet.

The law requires that every motor vehicle shall be equipped with headlights so aimed and of such intensity as to reveal persons and vehicles at a distance of at least three hundred fifty feet while on high beam, and at least one hundred feet ahead while on low beam. RCW 46.40.140.

■ This court has had occasion many times to consider the admissibility of evidence covering experiments and demonstrations. In *Halverson v. Seattle Electric Co.,* 35 Wash. 600, 77 Pac. 1058, we said:

"Appellant next contends that the court erred in refusing to permit certain witnesses to testify to the results of experiments made by them in running the same car upon which the accident occurred through the same curve. The witnesses showed that these experiments were made under different conditions from those existing at the time of the accident. They were made at a different time of day, when the electric current would have less load and, therefore, more power. The experiments were also made with no load upon the car, and upon a dry rail, while the car at the time of the

accident was heavily loaded with passengers and the rails were wet. It is argued by appellant that the conditions existing when the experiments were made were more favorable to the respondent than the conditions existing at the time of the accident, and that the court, therefore, should have permitted the results to be shown, notwithstanding the dissimilar conditions. The general rule as laid down by Mr. Freeman, in his note on page 375 to *Chicago etc. R. Co. v. Champion*, reported in 53 Am. St. Rep., at page 357, is as follows:

" 'There has been, until within recent years, some hesitation in receiving evidence of experiments or demonstrations; but the rule is now established that evidence of the results of tests or experiments is admissible if based upon conditions similar to those existing in the case on trial. In all cases of this sort, very much must necessarily be left to the discretion of the trial court, but the exercise of its discretion will not be interfered with where it has not been abused. From the liability to misconception and error, there can be no doubt that it is essential that the experiments or demonstrations should be made under similar conditions and like circumstances. When this is shown as a foundation for the introduction of experiments as evidence, they ought to be admitted, and the court's exercise of discretion in admitting them ought not to be interfered with.'

"We have no doubt that this is the correct rule. The fact that the conditions are more favorable to the test, or less favorable, ought not to change the rule that the experiments must be made under similar conditions and like circumstances. The similarity of the circumstances and conditions must be left to the sound discretion of the trial court, and determined by him, subject to review only for abuse. Where the conditions and circumstances are so different or dissimilar as to probably bring about different results, as they evidently were in this case, it is not an abuse of discretion to exclude the results of the experiments."

*American Products Co. v. Villwock*, 7 Wn. (2d) 246, 109 P. (2d) 570, 132 A. L. R. 1010, involved a collision between two trucks. One truck was following a girl riding a bicycle. The truck went into the opposite lane and, after passing the girl, got back into its own lane, but not soon enough to avoid colliding with the oncoming truck. One question was whether the driver saw, or could have seen, the girl on the bicycle sooner. About a week after the collision, a test was

made at the scene of the accident. The time of day was ten minutes earlier to compensate for the fact that the days were getting shorter. A girl, wearing clothes similar to those worn by the original rider, rode the same bicycle. Two witnesses followed in an automobile some distance back. (No question was raised with reference to the fact that an automobile was used rather than a truck.) The experiments showed that, when the bright lights were used, the girl could be seen a distance of two hundred twenty-five feet, and when the dim lights were used she could be seen a distance of one hundred seventy-five feet. In approving this test, we said:

"Furthermore, matters of this kind rest largely in the discretion of the trial court, and are reviewable only for abuse of sound judicial discretion. *Halverson v. Seattle Electric Co.*, 35 Wash. 600, 77 Pac. 1058; *Truva v. Goodyear Tire & Rubber Co.*, 124 Wash. 445, 214 Pac. 818; *Washington v. Seattle,* 170 Wash. 371, 16 P. (2d) 597, 86 A. L. R. 113."

In *Briggs v. United Fruit and Produce,* 11 Wn. (2d) 466, 119 P. (2d) 687, in discussing a test, we said:

"Appellant contends that the trial court improperly admitted, over its objection, evidence given by a police officer of the city of Yakima, concerning a test which he made shortly before the trial, as the result of which the officer testified that, under the high beam of the lights from an ordinary automobile, the reflector on respondent's bicycle could be seen from a distance of four hundred feet, and under the down beam, was visible at two hundred feet. It appears that, at the time of the test, the weather conditions were similar to those of the night of the accident, with the exception that snow had fallen on the afternoon of the test, which had, however, been removed from the highway to the side of the road. It also appeared that prior to the test the red reflector on the bicycle had been cleaned, and that during the test the bicycle was placed upon the concrete portion of the highway, instead of upon the strip of dark asphalt.

"It is argued that the presence of snow upon the ground at the side of the highway tended to make the visibility greater than at the time of the accident. There was no moonlight, and while the presence of snow might have a tendency to reflect starlight or any light in the atmosphere,

it does not appear that it would greatly increase the visibility, and it would seem that it would have little effect upon the visibility of the reflection from the lights of an automobile shining on the reflector. In the case at bar, the presence of the usual type of red reflector on the bicycle was admitted. The moving bicycle and rider, the visibility being good, would normally be seen by the driver of an automobile, aided by good lights, before the car would reach or pass the bicycle moving in the same direction, but appellant's driver testified positively that he did not see respondent at any time until after the accident.

"Evidence concerning such tests as that now under discussion should be admitted with care, and only when it appears that the conditions under which the test was made and all the surrounding circumstances are reasonably comparable to the situation concerning which the test is supposed to be of assistance to the trier of the facts. If, however, it appear that the experiment substantially reproduces the original situation, any slight departure therefrom goes to the weight, rather than the admissibility, of the evidence."

In *Amsbary v. Grays Harbor R. & Light Co.,* 78 Wash. 379, 139 Pac. 46, 8 A. L. R. 1, we reversed the trial court for refusing to permit the introduction of evidence of similarity of conditions concerning an experiment. We quoted from several decisions in other jurisdictions, and said:

"We believe the authorities warrant the assertion that, while appellate courts will not lose sight of the general rule that the admission or rejection of evidence of the result of experiments is largely discretionary in a trial court, the exercise of such discretion will, upon appeal, be viewed somewhat more critically when such evidence is rejected than when it is received. This would seem to be so because of the fact that the admission or rejection of such evidence, in so many instances, has to do more with its weight than with its relevancy, strictly speaking."

In *People v. Auerbach,* 176 Mich. 23, 141 N. W. 869, a homicide case, the people had introduced testimony of experiments made with the identical gun which was in the possession of the defendant at the time of the killing. The defendant offered testimony of an experiment made with a double barreled shotgun, which differed in length and construction from the gun in the defendant's possession. The

trial court refused to admit this testimony, pointing out that the guns were dissimilar, the trigger guards were dissimilar, and the action of the gun and rifle were dissimilar. In affirming the trial court, the appellate court said:

"We are of opinion that the court did not err in its ruling, especially for the reason that the guns were dissimilar, and such evidence might have had a tendency to confuse rather than to enlighten the jury."

In the case at bar, the trial court could well have rejected the testimony on the ground that there was a dissimilarity of the conditions and circumstances. However, the court admitted this testimony, feeling that there was not a sufficient dissimilarity of circumstances and conditions to confuse the jury. We cannot say, from our examination of the record, and considering the searching cross-examination of the witnesses concerning the experiment, that the trial court abused its discretion in this regard.

Error is assigned to the trial court's refusal to give the following proposed instruction:

"Evidence has been received of an experiment in connection with lights of defendant's automobile made out of sight of the court and the jury. This evidence is to be considered by you only if you find that the facts and circumstances surrounding the experiment were substantially the same as those existing at the point of collision; otherwise you will disregard such experiment and all testimony relating thereto."

It was not error to refuse the proposed instruction. As has been heretofore pointed out, the question of similarity of conditions is for the court to decide, and the weight of such evidence of an experiment, if admitted, is for the jury.

The judgment and sentence is affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

October 6, 1955. Petition for rehearing denied.